**WESTERN TRANSPORTATION COMPANY, Plaintiff-Appellant,**

v.

**COUZENS WAREHOUSE & DISTRIBUTORS, INC., Defendant-Appellee.**

**No. 82–1263.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 23, 1982.
Decided Dec. 14, 1982.

**1034**

& Distributors, Inc. were transported by Western across state lines and that, therefore, Couzens must pay tariff charges. Couzens moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). The district court ruled that it did not have subject matter jurisdiction over the controversy and granted the motion to dismiss. We affirm.

I

Plaintiff Western carried shipments of various goods from Defendant Couzens' warehouse in Hodgkins, Illinois to points in Illinois, Iowa, and Michigan. The goods stored in the warehouse were owned by merchants who rented space from Couzens. Western shipped the goods to those merchants' customers. At the time that Western began transporting the goods, Western picked up the freight at Couzens' warehouse in Hodgkins and loaded it directly onto Western trucks.

Shortly after the shipping operations began, Western and Couzens orally agreed that Couzens would load the goods onto pallets before Western came to pick them up, in order to reduce the time it took Western drivers to load their trucks. Western then loaded the pallets onto its trucks. Western agreed to give Couzens an equal number of pallets in exchange, or to return Couzens' pallets whenever its drivers returned for another pick-up. Western orally agreed to take the pallets loaded with goods to its terminal in Chicago, Illinois, where Western would transfer the goods to its own pallets for shipment to the customers. The oral agreement was made in late 1975 or early 1976. The parties acted under this agreement until February 1979, when the shipping relationship ended. Significantly, Western does not challenge either the existence or the terms of the oral agreement.[1]

Steven C. Weiss, Chicago, Ill., for plaintiff-appellant.

William H. Towle, Burke, Kerwin, Towle & Andrin, Chicago, Ill., for defendant-appellee.

Before BAUER, POSNER and COFFEY, Circuit Judges.

BAUER, Circuit Judge.

Plaintiff Western Transportation Company brought this action under Section 217(b) of the Interstate Commerce Act, 49 U.S.C. § 10761 (1980), claiming that pallets belonging to Defendant Couzens Warehouse

---

1. In its Reply to Defendant's Motion to Dismiss before the district court, the plaintiff wrote: "It is WESTERN's position that there was no agreement between WESTERN and COUZENS and that if such an 'oral agreement' had been entered into, it would be invalid unless it had been reduced to writing and published in a tariff pursuant to Title 49 U.S.C. § 10761(a)." In the next sentence, however, Western assumed the existence of such an agreement and apparently argued that it was illogical for Western to have the pallet exchange system described by Couzens and, therefore, any agreement must have been to use Couzens' pallets for direct shipments across state lines. Based on this rather amorphous argument, Western concluded that

Western claims that beginning sometime in 1977, it began to transport the goods loaded on Couzens' pallets directly from the warehouse to customers in Iowa and elsewhere without transferring the goods to Western's own pallets at its Chicago terminal. Couzens denies any knowledge of Western's deviation from the oral accord. In an affidavit filed in support of the motion to dismiss, Couzens' former vice-president of traffic distribution detailed the oral agreement and averred that if Western used Couzens' pallets beyond the terms of the oral agreement, *i.e.* in interstate commerce, that use was unauthorized. On the other hand, Western argues that Couzens knew that the pallets were being handled in violation of the oral agreement, and that in any event the oral agreement was an illegal circumvention of the requirements of the commerce act that interstate pallet movements be covered by a published tariff. 49 U.S.C. § 10761(a) (1980).

any oral agreement alleged by Couzens "vanishes into absurdity," and stated that the basis for Couzens' assertions was a "misunderstanding." At the end of its Reply, Western states that "it is extremely doubtful" that there was an oral agreement.

The district court concluded that the existence of the oral agreement was established through a Couzens affidavit and was uncontested. In its brief before this court, Western described in detail the oral agreement and never challenged the district court's findings on this point, but only correctly claimed that the terms of the oral arrangement were never incorporated into a properly filed tariff. Thus, it is clear to this court that an oral agreement existed between Western and Couzens under the terms described in the briefs.

2. Western alleged jurisdiction under 28 U.S.C. § 1337, which gives district courts original jurisdiction of any civil action arising under Acts of Congress regulating commerce. The district court ruled that, because the Interstate Commerce Act did not apply to the Western-Couzens relationship, it did not have jurisdiction under § 1337 to hear the suit. The commerce act regulates motor carrier transportation between two states, 49 U.S.C. § 10521(a)(1)(A), but does not extend to purely intrastate motor carrier transportation, 49 U.S.C. § 10521(b).

3. (a) Except as provided in this subtitle, a carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title shall provide that transportation or

## II

### A. Validity of the Oral Agreement

The district court found that because the oral agreement between the parties did not authorize interstate transportation of Defendant Couzens' pallets, that court did not have jurisdiction to adjudicate the suit.[2] Plaintiff Western argues that the oral agreement is invalid and therefore cannot defeat jurisdiction. Western claims that the Supreme Court's ruling in *United States v. United States Smelting Co.,* 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950), supports its proposition. *United States Smelting,* however, only notes that preferential carrier services performed for shippers by rendering services beyond those which the carrier is obligated to perform under a filed tariff violate the Interstate Commerce Act.[3] The Supreme Court did not consider whether the services at issue there fell within the Act's parameters; that

service only if the rate for the transportation or service is contained in a tariff that is in effect under this subchapter. That carrier may not charge or receive a different compensation for that transportation or service than the rate specified in the tariff whether by returning a part of that rate to a person, giving a person a privilege, allowing the use of a facility that affects the value of that transportation or service, or another device. 49 U.S.C. § 10761(a) (1980).

The appellee-carriers in *United States Smelting* performed a large amount of intraplant switching of railroad cars for United States Smelting Company. In one 12-month period, the carriers handled as many as 30,000 train cars. The Interstate Commerce Commission ordered the switching services stopped because they were not provided for in the filed tariff covering the "line-hauling" relationship between the parties. *United States v. United States Smelting Co.,* 339 U.S. 186, 188–90, 70 S.Ct. 537, 539–40, 94 L.Ed. 750 (1950). The district court held that the Commission's orders were unlawful and permanently enjoined their enforcement, but the Supreme Court reversed. The Court held that the Commission had the power to establish the parameters of the filed tariff, so that one shipper would not be forced to pay identical rates for less service than required by other shippers. *Id.* at 197, 70 S.Ct. at 543–44. The Court noted that the carriers were free to file new tariffs to conform charges to the services they were performing. *Id.* at 198, 701 S.Ct. at 544.

*United States Smelting* certainly does not stand for the proposition that no services can

they did was not at issue. Here the question is not whether preferential services were performed in violation of an existing tariff, but rather whether the movements of the pallets themselves fall within the jurisdiction of the commerce act. Any further analysis would take us into the merits of Western's claim—the very step that dismissal for want of subject matter jurisdiction is designed to avoid. *See infra* section IIB.

The pallet exchange program at issue in *Legality of Pallet Exchange Agreement, Kraft Foods Division of National Dairy Products Corp.,* 322 I.C.C. 439 (1964), does raise issues similar to those before us, but also is very different from the Western-Couzens relationship. In *Kraft Foods,* an association of motor common carriers petitioned the Interstate Commerce Commission seeking a declaration that a pallet exchange agreement between thirty of its members and Kraft Foods violated the Interstate Commerce Act. Kraft had a written agreement with the carriers giving the carriers the option to exchange pallets on any shipment rather than unloading goods from the pallets and reloading the goods onto other pallets. The goods were packaged food products processed and shipped by Kraft to its plants and warehouses in seven states and non-Kraft locations in additional states. The commission ruled that the movement of pallets was a "service in connection" with interstate transportation, and that the arrangement violated section 217 of the commerce act because it was not published in the appropriate tariff. *Kraft*

*Foods,* 322 I.C.C. at 441–44.[4] Although both the *Kraft Foods* relationships and the Western-Couzens relationship contemplated exchange of pallets in the transportation of freight, the similarity ends there. The key difference is that the *Kraft Foods* pallet exchange agreements authorized interstate deliveries of the pallets in conjunction with the interstate movement of Kraft products.

■ Here, Couzens did not desire or authorize interstate movement of its pallets. The freight loaded on the pallets was not owned by Couzens, so the arrangement between Couzens and Western dealt only with the fourteen-mile haul from Hodgkins to Western's Chicago terminal. There is no basis for application of the Interstate Commerce Act. Western was bound by its agreement to move Couzens' pallets only to Chicago. Western cannot perform acts to its own advantage in violation of its contract and then claim a right to reimbursement under a statute that would not apply but for the unauthorized acts.

We conclude that the agreement to exchange Couzens' pallets was separate and apart from the movement of freight. The pallet exchange agreement was envisioned to entail only purely intrastate activity and, therefore, was perfectly valid despite the fact that it was not incorporated into a filed tariff, because the Interstate Commerce Act tariff requirements do not apply.

## B. Rule 12(b)(1) Dismissal

As stated above, the district court dismissed this lawsuit for want of subject mat-

be performed by a carrier for a shipper unless they are enunciated in a tariff. Rather, the case states that if a service is performed that falls within the jurisdiction of the Interstate Commerce Commission, thereby requiring a tariff to be filed, then the carrier cannot give preferential treatment to the shipper by performing services in excess of that tariff. The question on this appeal is whether the oral pallet exchange agreement falls within the jurisdiction of the Interstate Commerce Act.

4. The commerce act, now codified in § 10762(a)(1), requires:

A carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title (except a motor common

carrier) shall publish and file with the Commission tariffs containing the rates and (A) if a common carrier, classifications, rules, and practices related to those rates, and (B) if a contract carrier, rules and practices related to those rates, established under this chapter for transportation or service it may provide under this subtitle. A motor common carrier shall publish and file with the Commission tariffs containing the rates for transportation it may provide under this subtitle. . . .

Section 10102(24)(B) defines "transportation" as including "services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property."

ter jurisdiction. Fed.R.Civ.P. 12(b)(1) (1966). Plaintiff Western argues that this was error because the court actually ruled on the merits when it held that the oral agreement was valid, thereby defeating jurisdiction. Western argues that under *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1945), the district court was required to exercise jurisdiction because the pallets in fact moved across state lines. This characterization misconstrues the basis upon which a court exercises jurisdiction.

■ The Supreme Court in *Bell v. Hood* explained that jurisdiction is not defeated by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether a complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. [citations omitted.] The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.

327 U.S. at 682–83, 66 S.Ct. at 776.[5] Here, federal jurisdiction is proper only if the activities at issue involved interstate transportation of freight. To make that determination, the district court had to recognize the oral pallet exchange agreement. The oral agreement rendered the federal statute immaterial to the case.

■ The Supreme Court, in a series of decisions, has outlined the standards to apply when determining if a court has jurisdiction. In *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974), a suit brought under the general federal question statute, 28 U.S.C. § 1331(a) (1976), the Court set the standard for dismissal as when a claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court...." *Accord, Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 70–71, 98 S.Ct. 2620, 2628–2629, 57 L.Ed.2d 595 (1978) (dismissal under § 1331(a) proper only if cause of action is "patently without merit"); *Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1381–1382, 39 L.Ed.2d 577 (1974) ("so patently without merit" test applied to action under 28 U.S.C. § 1343(3) (1979) general constitutional claims jurisdiction). The cause of action before us arose not under a general federal jurisdictional grant, but rather under 28 U.S.C. § 1337 (1980) vesting original jurisdiction in the district courts for claims arising under federal statutes regulating commerce. The alleged wrong was based upon a statute regulating commerce that is, in fact, immaterial to the claim, *Bell v. Hood,* 327 U.S. at 682, 66 S.Ct. at 776; therefore the action was properly dismissed.

■ The affidavit of Couzens' vice-president established that Western was not authorized to move Couzens' pallets across state lines. As discussed in footnote 1, *su-*

---

**5.** The plaintiff in *Bell v. Hood* sued for damages for violations of rights under the Fourth and Fifth Amendments. The trial court dismissed the suit on the ground that the action did not arise under the Constitution or federal law. The Ninth Circuit affirmed, but the Supreme Court reversed. The Court noted that it was clear that the complaint implicated violations of Fourth and Fifth Amendment rights. The trial court could not decide the serious legal and factual issues raised by the complaint until it had assumed jurisdiction over the controversy. An alleged claim relying for jurisdiction on the Constitution or federal statutes may be dismissed for want of jurisdiction only when that law is immaterial or the claim itself is insubstantial and frivolous.

*pra,* Western does not challenge the existence of the oral agreement between it and Couzens. The Interstate Commerce Act neither forbids motor carrier agreements regarding purely intrastate transportation, 49 U.S.C. § 10521(b), nor requires that the service rendered by Western under the oral agreement be included in a filed tariff, 49 U.S.C. §§ 10521(b)(2), 10762(a)(1).

■ We note that the district court may review any evidence submitted on the issue to determine if subject matter jurisdiction in fact exists. *Nuclear Engineering Co. v. Scott,* 660 F.2d 241, 252 (7th Cir.1981); *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979). Moreover, the party alleging jurisdiction must support its allegation with competent proof of jurisdictional facts. *Nuclear Engineering,* 660 F.2d at 251; *Grafon,* 602 F.2d at 783. Western's complaint contains only the bare statement that jurisdiction exists under the Interstate Commerce Act. Western did not respond to Couzens' affidavit with competent proof that jurisdiction existed. That affidavit stands, therefore, as proof that the district court did not have jurisdiction over the dispute.

Western argues that the mere fact that the pallets moved between states, a fact recognized by the trial court, supports jurisdiction. In response to this, we simply state that we see no reason to allow this plaintiff in effect to create jurisdiction under the Interstate Commerce Act by hauling these pallets to Iowa and back without authorization. The district court is not precluded from considering conflicting evidence which weighs on the jurisdictional determination. The Third Circuit has explained that establishing jurisdiction on a Rule 12(b)(1) motion entails more than mere acceptance of the plaintiff's factual allegations:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court

from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977) [footnote omitted]. This court recognizes that procedure. *Grafon,* 602 F.2d at 783.

The plaintiff did not contest the existence of an oral agreement for purely intrastate movement of pallets during the district court's deliberations on the defendant's Rule 12(b)(1) motion to dismiss. Therefore, the district court's recognition of the existence of that agreement will not be disturbed. *See, e.g., Williamson v. Tucker,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (factual determinations by the district court reviewed under "clearly erroneous" standard).

### III

The Interstate Commerce Act does not forbid agreements between carriers and shippers for intrastate exchange of pallets. Western Transportation Company does not have a claim within the jurisdictional powers of the district court.

AFFIRMED.