FILA SPORT, S.p.A., Plaintiff,

v.

DIADORA AMERICA, INC., Defendant.

No. 90 C 5179.

United States District Court,
N.D. Illinois, E.D.

Oct. 7, 1991.

Peter M. King, Jay A. Canel, Canel, Davis & King, Chicago, Ill., Barry G. West, Steven S. Davis, Armato, Gaims, Weil, West & Epstein, Los Angeles, Cal., for plaintiff.

Robert J. Krupka, Janice L. Block, Kirkland & Ellis, Chicago, Ill., J. Michael Cleary, Brylanski, Cleary & Leeds, Washington, D.C., for defendant.

## ORDER

ALESIA, District Judge.

Plaintiff, Fila Sports, S.p.A. ("plaintiff") brings this action for federal trademark infringement (Count I) and federal unfair competition (Count II) against defendant, Diadora America, Inc. ("defendant"). Currently before the Court is defendant's motion to dismiss Counts I and II of plaintiff's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. In its motion, defendant also requested an award of its attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure. This Court referred defendant's motion to Magistrate Judge Guzman for a Report and Recommendation. On June 19, 1991, the Magistrate Judge issued his report, recommending that defendant's motion to dismiss Counts I and II for lack of subject matter jurisdiction be granted, and that defendant's motion for sanctions be denied. The Magistrate Judge did not address defendant's additional argument that Count II should be dismissed for failure to state a claim upon which relief may be granted.

Plaintiff failed to file timely objections to the Magistrate Judge's report. After reviewing the Magistrate Judge's report and the parties' underlying briefs, we agree with the Magistrate Judge's conclusion that Counts I and II of plaintiff's complaint must be dismissed for lack of subject matter jurisdiction. The mere filing of an intent-to-use application under 15 U.S.C. § 1051(d) does not confer jurisdiction on the federal courts. Rather, plaintiff must allege that it has a valid federal trademark registration or allege the actual use of the marks in commerce. We agree with the Magistrate Judge that plaintiff has failed to establish registration of the marks, and the record before this Court clearly demonstrates there is no use of the marks in interstate commerce.

Accordingly, Counts I and II are dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In light of this determination, the Court declines to address defendant's motion pursuant to Rule 12(b)(6) with respect to Count II.

Finally, because this Court agrees with the Magistrate Judge's well-reasoned analysis and conclusions, we adopt his Re-

port and Recommendation of June 19, 1991, in its entirety. Consistent with the Magistrate Judge's Report and Recommendation, we grant defendant's motion to dismiss Counts I and II pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure without prejudice, and deny defendant's motion for attorneys' fees and costs pursuant to Rule 11 of the Federal Rules of Civil Procedure. This case is dismissed without prejudice.

## REPORT AND RECOMMENDATION

RONALD A. GUZMAN, United States Magistrate Judge.

Defendant, DIADORA AMERICA, Inc. ("Diadora") has filed its Motion to Dismiss the complaint of FILA SPORT, S.p.A. ("Fila") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Diadora also has requested that sanctions be imposed against Fila pursuant to Rule 11 of the Federal Rules of Civil Procedure.

## BACKGROUND FACTS

Fila, formerly known as "Maglificio Biellese Fratelli," is a corporation organized and existing under the laws of Italy, having its principal place of business at Viale Cesare Battisti 26, 13051 Biella, Italy.[1] Fila manufactures and distributes, and selectively licenses others to manufacture and distribute, their sportswear and sporting goods, including sport shoes. These items bear the Fila "F" logo.[2]

Since March of 1974, Fila has sold sportswear bearing the Fila trademarks through its wholly-owned California subsidiary, Fila Sports, Inc., in the United States and elsewhere. Further, Fila has had famous athletes promote its products and has sponsored major sports events, many of which are broadcast worldwide on television.[3] As a result of these promotions and sales, Fila's trademarks have become assets of

importance to Fila and have become associated in the minds of the trade and the general public with Fila.[4]

In the spring of 1989, Fila conceived, designed, manufactured and patented a new athletic shoe which allows the wearer to absorb the shock produced by the impact of the foot on the ground and then transfers to the wearer a portion of the energy resulting from the shock.[5] In connection with these shoes, Fila has two trademarks, "Fila 2 Actions 2A," and "Fila Double Action."

On November 27, 1989, Fila registered the trademark "Fila 2 Actions 2A" for footwear in Italy and a second trademark applicable to the entirety of Europe.[6] On June 15, 1990, Fila filed an Intent to Use Trademark Application under the name "Fila Double Action" in the United States pursuant to 15 U.S.C. sec. 1051(b), for "footwear and t-shirts," No. 74/069315.[7]

In its complaint, Fila states that on December 28, 1989, more than a month after Fila filed in Italy for trademark protection under the "2 Actions" mark, Diadora's Italian parent corporation, Diadora–Calzatorificio Fratelli Danielli, S.p.A. ("Diadora Italy") applied for a trade mark in Italy under the name "Double Action." Fila has commenced litigation against Diadora in Italy challenging its application for a "Double Action" or "2 Actions."[8]

Fila states that a major international trade show was held in Chicago, Illinois beginning approximately July 30, 1990. At the Chicago trade show, Diadora maintained a booth where it displayed footwear prominently bearing the name "Double Action," and distributed brochures promoting the sale of "Double Action" shoes. On information and belief, Diadora offered and sold at the Chicago trade show "Double Action" shoes to distributors and retailers from throughout the United States, includ-

1. Complaint, p. 3.

2. Complaint, p. 7.

3. Complaint, p. 10.

4. Complaint, p. 10.

5. Complaint, p. 16.

6. Complaint, p. 17.

7. Complaint, p. 19.

8. Complaint, p. 21.

ing, without limitation, the Northern District of Illinois.

Fila further states that use of the "Double Action" trademark by Diadora is likely to cause confusion and mistake in the minds of wholesalers, retailers, and the purchasing public, and, in particular, falsely creates the impression that the goods manufactured, distributed and sold by defendants are authorized, sponsored or approved by Fila, when, in fact, they are not.[9]

## DISCUSSION

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), "the factual allegations contained in plaintiff's complaint must be taken as true and must be viewed, along with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiff." *Meriwether v. Faulkner*, 821 F.2d 408, 410 (7th Cir.1987), *cert. denied* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (1987). A complaint should be dismissed only when "it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 954 (7th Cir.1989), *cert. granted*, 493 U.S. 807, 110 S.Ct. 48, 107 L.Ed.2d 17 (1989), *affirmed in part, reversed in part*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1989).

■ Once the existence of subject matter jurisdiction is challenged in a motion to dismiss under Fed.R.Civ.P. 12(b)(1), the burden of establishing such jurisdiction shifts to the party asserting the same. The burden always rests on the party asserting jurisdiction. *Western Transportation Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033 (CA 7th, 1982); *Nuclear Engineering Co. v. Scott*, 660 F.2d 241 (CA 7th, 1981). If the motion to dismiss challenges the truth of the jurisdictional facts in the complaint, the court may receive evidentiary materials such as affidavits, deposition testimony and the like in order to decide the factual issues. *Land v. Dollar*, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Western Transporta-*

*tion Co. v. Couzens Warehouse & Distributors, Inc.*, 695 F.2d 1033 (CA 7th, 1982); *Pintozzi v. Scott*, 436 F.2d 375 (CA 7th, 1970). Consideration of materials outside the pleadings on this type of Rule 12(b)(1) motion does not convert the motion to one for summary judgment. 2A *Moore's Federal Practice* § 12.07[2.1].

■ Diadora asserts that both counts of Fila's complaint lack subject matter jurisdiction pursuant to Rule 12(b)(1) and fail to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). In particular, Diadora argues that Fila must have a valid federal trademark registration to assert a claim for infringement, and have used its mark in commerce to assert a claim for unfair competition. Because Fila has only filed an **application** to register under the "intent to use" statute and has not used its mark in United States commerce, defendant argues there is no jurisdictional basis either for the Count I allegation of infringement, or the Count II allegation of unfair competition and the complaint must be dismissed. Fila's complaint clearly alleges that it has actually "registered" the trademarks in question. However Diadora directly refutes this in its motion and attaches evidentiary material, including certified copies of the official files of plaintiff's applications, showing that the applications remain in the preliminary stages and have not yet resulted in registrations. I find from these materials and from the lack of any contrary submissions by Fila in its response to the motion, that Fila has failed to establish actual registration in the U.S. of either of its two marks.

Fila, in opposition to Diadora's motion to dismiss, contends that Diadora's lack of jurisdiction argument is not the relevant argument but contends, however, that this case presents the question of whether a party who files an "intent to use" trademark application, and thereby discloses valuable trade secret information regarding its future product and marketing plans, is left unprotected when a competitor decides to saturate the market with compet-

9. Complaint, p. 22.

ing goods under the same or a confusingly similar name before the party filing the intent to use applications is ready to sell its product. Fila argues that the relevant issue is not one of jurisdiction, but whether a party's stated intent to use a mark is bona fide. This issue, Fila claims, is not susceptible to determination on a motion to dismiss.

Diadora cites 15 U.S.C. § 1051 of the recently Amended Lanham Act to support its claim of dismissal. This recently amended section of the Lanham Act is commonly referred to as the "intent to use" provision and states as follows:

15 U.S.C. § 1051(b)

A person who has a bona fide intention, under circumstances showing good faith of such persons, to use a trademark in commerce may apply to register the trademark under this chapter [15 U.S.C. sec. 1051 et seq.] on the principal register hereby established: (1) By filing in the Patent and Trademark Office—(A) a written application ... specifying applicant's ... bona fide intention to use the mark in commerce....

15 U.S.C. § 1051(c)

At any time during examination of the an application filed under subsection (b) of this section, an applicant who has made use of the mark in commerce may claim the benefits of such use for purposes of this chapter, by amending his or her application to bring it into conformity with the requirements of subsection (a) of this section.

15 U.S.C. § 1051(d)(1)

Within six months after the date on which the notice of allowance with respect to a mark is issued under section 1063(b)(2) of this title to an applicant under subsection (b) of this section, the applicant shall file in the Patent and Trademark Office, ... a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce.... **Subject to examination and acceptance** of the statement of use, the mark **shall be registered** in the Patent and Trademark Office, a certificate of registration shall be issued for those goods or services recited in the statement for use for which the mark is entitled to registration, and notice of registration shall be published in the Official Gazette of the Patent and Trademark Office.

As can be seen, the amended statute, at subsection "(d)", provides that the applicant has six months after its "intent to use" filing to verify actual use in commerce before the mark is actually registered. The applicant also has the option of amending the application to one which verifies actual use as opposed to intended use. The difference between a mere application and actual registration has not been abrogated by the "intent to use" amendments. These new statutory sections merely change the law as to when an "application" for registration may first be filed. There is no change as to when registration, which triggers federal jurisdiction, takes place.

The above provision for the first time allows parties to apply for registration of a mark without ever having used the mark in interstate commerce. As the Senate Judiciary Committee report on the Amended Act recognized, in certain industries it may be impossible to make use of a mark before a business makes a significant financial investment in the goods or services to which the mark will apply. *Senate Report* No. 100–515, U.S.Code Cong. & Admin.News 1988, p. 5577, September 15, 1988.

Diadora's point is that despite this markedly new amendment, the provisions of the Lanham Act concerning jurisdiction were not amended and that the grant of original jurisdiction to the federal district court in an infringement action is solely where the infringed mark is the subject of an United States Registration. Diadora relies on 15 U.S.C. §§ 1114(1)(a), 1116 and 1125(a). These sections provide as follows:

§ 1114. **Remedies; infringement; innocent infringement by printers and publishers.**

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a *registered* mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

. . . . .

### § 1116. Injunctions; enforcement; notice to Commissioner

The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark *registered* in the Patent and Trademark Office.

. . . . .

### § 1125. False designations of origin and false descriptions forbidden.

(a) Any person who shall affix, apply or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall causes such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

Diadora argues that the records of the Patent and Trademark Office unequivocal-ly show that Fila has no effective registrations. Rather, Fila has only a pending "intent to use" application and that Fila as yet has not used these two marks in United States commerce. Diadora also argues that Congress did not intend for "intent to use" applicants to have access to the federal courts prior to registration. See H.R.Rep. No. 1028, 100th Cong., 2nd Sess. 4 (1988). The above quoted sections of the statute seem to support this argument. It is clear from these sections that application and the granting of actual registration are two separate things. It is also clear that the actual registration of the mark will not take place until there is a verification of actual use, or an amendment of the application to allege actual use. There is no statement in that statute to indicate that mere application under this new (intent to use) section will suffice to grant the applicant rights of access to the federal court before the registration is granted.

■ Traditionally, Section 1338(a) of the Judicial Code conferred upon the district courts jurisdiction of any civil action arising under any Act of Congress relating to patents, copyrights, and trademarks. 28 U.S.C.A. § 1338(a) citing Wright, Miller and Cooper, Federal Practice, § 3582, p. 298 (2d ed. 1988). This general grant of jurisdiction, however, has been somewhat limited in trademark cases. Wright, Miller and Cooper, *Federal Practice*, § 3582, (2d ed.1988) at 312. While the Constitution gives Congress express powers to enact patent and copyright laws, Congress must rely on its general powers to regulate interstate and foreign commerce in order to regulate trademarks. *Id.* at 312. Since only trademarks used in interstate commerce may be registered under federal law, and since, in the absence of diversity,[10] the district courts have no jurisdiction over common law trademarks or other trademarks not registered under federal law, an action for trademark infringement must involve interstate commerce for a district court to have jurisdiction. *Id.* at 315.

---

**10.** Plaintiff has not alleged in its complaint the existence of diversity jurisdiction, but rather has relied solely upon the assertions of jurisdiction under the Lanham Act.

Further, certain provisions of the Lanham Act were specifically designed to provide protection to trademarks registered elsewhere by foreign nationals, and 15 U.S.C. § 1126(d) provides that a trademark registration application filed by a foreign national "shall be accorded the same force and effect as would be accorded to the same application if filed in the United States on the same date in which the application was first filed in (the) foreign country." However, 15 U.S.C. § 1126(d)(4) requires that nothing in this subsection (d) shall entitle the owner of a registration granted under this section to sue for acts committed prior to the date on which his mark was *registered* in this country unless the registration is based on use in commerce.

In the case at bar, in the spring of 1989, Fila conceived, designed, manufactured and patented the new athletic shoe which is the subject of the registrations. Further, on May 24, 1990, Fila filed an intent to use application for registration of its name "Fila 2 Actions 2A" in the United States for footwear pursuant to, 15 U.S.C. § 1051(b). Fila's pending application clearly states that they are asserting a claim of priority based upon this foreign application in accordance with 15 U.S.C. § 1126(d) as amended with respect to the footwear.

The above statute clearly affords protection to applicants such as Fila and permits qualified foreign applicants who own a registered mark in their country of origin to obtain a United States trademark registration without alleging actual use in United States commerce as long as the United States application is filed within six months of the filing of the foreign application. *See SCM Corp. v. Langis Foods, Ltd.*, 539 F.2d 196, 199 (1976). However, this statute only affects the when, how and why of filing the application. It does not grant federal jurisdiction independent of that existing for applications based upon actual use or upon actual registration. So that the statute makes it easier and more convenient for a foreign trademark holder to file for trademark registration in the U.S., but it does not grant that foreign trademark holder any right to sue in federal court absent actual use in the U.S. or final actual registration in this country. It does not grant the same rights to applicants as exist for actual registrants. Fila is at this point only an applicant. Absent a valid actual registration of its mark, Fila must allege either diversity jurisdiction, or use in interstate commerce. *Jellibeans v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833 (11th Cir.1983); *Lone Ranger Television, Inc. v. Program Radio Corporation*, 740 F.2d 718 (9th Cir.1984); *Falcon Rice Mill, Inc. v. Community Rice Mill, Inc.*, 725 F.2d 336 (5th Cir.1984). Although Fila has alleged actual registration, this has been challenged by Diadora and I have found that Fila has failed to establish any such registration. The record is also clear that there is no use of the mark in interstate commerce and diversity jurisdiction, though it appears to be a possibility, has not been alleged or argued by Fila.

Therefore, it is recommended that defendant's motion to dismiss Count I (trademark infringement) and Count II (unfair competition) for lack of subject matter jurisdiction be sustained.

■ Having recommended the dismissal of both counts of plaintiff's complaint for lack of jurisdiction, it becomes necessary to take up the movant's request for Rule 11 sanctions against plaintiff and its attorneys. I note that Diadora's "brief" in support of this request consists of one paragraph without a single citation to supporting authority of any kind. My discussion will be just as brief. I am bothered by Fila's allegations of ownership of federal registrations for its trademarks when in fact it has been awarded no such registrations. However, the "intent to use" section of the statute is very new, and the precise issue of whether or not its passage was also meant to give an applicant rights of enforcement has not been ruled upon in this Circuit. At least no such case has been cited to me. I therefore do not believe that Fila's attempt to obtain such a ruling or interpretation ought to be sanctioned. I do believe that Fila's attorneys unnecessarily put their client in jeopardy of such a ruling by claiming ownership of a

registration, rather than asserting rights under this new application procedure. The claim of ownership however, can be viewed as merely a vehicle for asserting rights of protection under the new application procedure, and as such, I believe, would not be sanctionable.

### CONCLUSION

For the reasons set forth herein, it is recommended that defendant's motions to dismiss be sustained as to both counts, but defendant's motion for sanctions be denied.

DATE: JUNE 19, 1991

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *The Provident Bank v. Manor Steel Corp.,* 882 F.2d 258 (7th Cir. 1989).