**KELLEY COMPANY, INC., a Wisconsin corporation, Plaintiff,**

v.

**The CENTRAL NATIONAL INSURANCE COMPANY OF OMAHA, a Nebraska corporation, Defendant.**

**No. 84–C–0664.**

United States District Court, E.D. Wisconsin.

Dec. 5, 1984.

Matthew J. Flynn, Quarles & Brady, Milwaukee, Wis., for plaintiff.

Ned J. Czajkowski, Kluwin, Dunphy & Hankin, Milwaukee, Wis., for defendant.

**ORDER**

WARREN, District Judge.

The defendant, The Central National Insurance Company of Omaha (hereafter

"Central National"), has filed a motion for change of venue seeking to have this action transferred to the United States District Court for the District of Minnesota. Based upon its examination of those facts that are not in dispute, the Court will deny this motion.

The plaintiff, Kelley Company, Inc. (hereafter "Kelley"), is a Wisconsin corporation with its principal place of business in said state. Kelley manufactures mechanical and hydraulic dockboards, incinerators, and other industrial products. Central National is a Nebraska corporation with its principal place of business there. The insurance it provides is principally "excess" insurance which covers liability for damages over and above that covered by the primary layer of insurance.

In April of 1977, Central National issued an excess liability policy to Kelley under which Kelley was required to maintain $500,000.00 of primary coverage. This primary coverage was obtained from American Home Assurance Company (hereafter "American"). The Central National policy provided for coverage of $1,000,000.00 over and above the $500,000.00 primary coverage, and was subject to an additional $250,000.00 deductible for which Kelley was responsible.

On December 5, 1977, Albert J. Bilotta, Jr. was injured in an industrial accident in Minnesota which allegedly involved one of Kelley's products. Bilotta brought an action against Kelley in the Dakota County (Minnesota) District Court, and a jury originally awarded him 2.3 million dollars, of which Kelley was assigned 50% responsibility. This judgment subsequently was overturned by the Minnesota Supreme Court, and a new trial was ordered on the sole issue of liability.

Prior to the second trial, a settlement was reached between Bilotta and American under which American would pay Bilotta $486,942. In return, Bilotta agreed to satisfy the first $750,000 of any judgment against Kelley in a future trial.

Thereafter, Central National entered into an agreement with Bilotta to pay him a sum of money in excess of $250,000 in return for discharging Kelley and Central National from all further liability over $750,000. Central National then demanded payment of the $250,000 deductible by Kelley, and the latter refused.

Kelley now seeks a declaratory judgment from this Court that it is not responsible under the insurance contract between it and Central National for the $250,000 deductible or any amount of money. Central National contends that this case should be transferred to the District Court for the District of Minnesota, pursuant to 28 U.S.C. § 1404(a). Kelley opposes the transfer, and the Court agrees that the case should remain here.

█ Section 1404(a) provides as follows: For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

As derived from the statute, there are three considerations which must be made in determining whether a change of venue is appropriate: (1) whether the action could have been brought in the alternative forum; (2) whether the alternative forum would be more convenient for the parties and witnesses; and (3) whether the transfer would be in the interest of justice. The first consideration requires a more academic analysis, while the second and third considerations invoke the broad discretion of the Court. *Adler v. Avis Rent-A-Car System, Inc.*, 391 F.Supp. 466, 469 (E.D.Wis. 1975). The Court will address each consideration seriatim.

A. Whether This Action Could Have Been Brought In The U.S. District Court For The District Of Minnesota.

█ Despite plaintiff's protestations to the contrary, the Court believes that either party could have brought this action in the United States District Court for the District of Minnesota. While neither of the parties is a Minnesota-based corporation, both of them have sufficient "minimum

contacts" with Minnesota such that a court in that state would have *in personam* jurisdiction over them. *International Shoe Company v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The affidavit of Ned J. Czajkowski establishes that Central National does business in Minnesota, and this testimony is not contested. It is apparent that Kelley also does business in Minnesota, as it admits that it "manufactures dockboards and sells them throughout the country." (Plaintiff's Brief In Opposition To Motion For Change Of Venue, p. 6). In fact, one of Kelley's products was allegedly the cause of Bilotta's injury in Minnesota.

Since Kelley is doing business in Minnesota, the level of contact that it has with Minnesota is significantly higher than the level of contact between the automobile dealership and the State of Oklahoma in the case cited by Kelley in support of its position, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Kelley sells its products in Minnesota, while the dealership in *World-Wide Volkswagen* had merely sold a car which was transported through Oklahoma by the buyer.

In *Nordberg Division of Rex Chainbelt, Inc. v. Hudson Engineering Corp.*, 361 F.Supp. 903, 906 (E.D.Wis.1973), Judge Reynolds stated that:

> "Even without solicitation, one who invades the markets of the forum state to sell his products has sufficiently penetrated the state from an economic perspective to subject himself to its jurisdiction."

This Court is satisfied that Kelley has "sufficiently penetrated" Minnesota "to subject himself to its jurisdiction." Accordingly, this action could have been brought in the U.S. District Court for the District of Minnesota, and the first criterion for granting a change of venue is met.

### B. Convenience Of The Parties And Witnesses.

Central National has submitted a list of potential witnesses that it may call to testify regarding Kelley's alleged breach of contract. All of these witnesses are Minne-sota residents. On the other hand, Kelley has named four individuals that it expects will testify about the negotiations between Kelley and Central National that culminated in the issuance of the excess insurance policy. Presumably, these individuals are residents of Wisconsin. From the statements in Kelley's brief, it is at least clear that they are not residents of Minnesota.

Kelley argues that Central National's list of witnesses is too speculative to be given much weight in the balancing process. Moreover, Kelley argues that none of these prospective witnesses has any knowledge of the underlying insurance contract, and so their testimony is not likely to be material to the issues in the case.

Kelley's objections concerning Central National's prospective witnesses must be rejected. This Court has previously stated that, when a motion for change of venue comes at an early stage of the proceedings, it is not fatal to the movant's cause that the witnesses cannot be specified with certainty. *Adler*, 391 F.Supp. at 469. It is too early in the case to determine what the issues in the case will be, and what testimony will be relevant. Therefore, Central National cannot be expected to name, with certainty, what witnesses it will call at the trial.

Clearly, both parties have named witnesses who would be inconvenienced if the trial were held in the opposing party's preferred forum. Although uncertainty about which witnesses will testify is not a basis for completely discontinuing the "witness inconvenience factor," the existence of this uncertainty renders it inappropriate for the Court to simply count the number of named prospective witnesses in Minnesota and Wisconsin and opt for the forum where the majority reside. By the time the trial is held, these numbers could change. The only determination that can be made at this point with any degree of certainty is that there will be witnesses from both states who will be called upon to testify, and that witnesses will be inconvenienced whether the trial is held in Wisconsin or Minnesota.

With regard to the convenience of the parties, neither corporation has its main

office in Minnesota, which would appear to be an inconvenient forum for both. What is perhaps a more pertinent consideration, however, is which forum would be more convenient for each party's attorneys, since the convenience of the parties themselves becomes a somewhat muted concern when the parties are large corporations. Both parties have retained Milwaukee counsel to represent their interests thus far in this action, which leads the Court to believe that a trial in Wisconsin would not prove a problem for the lawyers involved.

Therefore, the Court does not view the District Court for the District of Minnesota as a more convenient forum for the parties, attorneys and witnesses than the Eastern District of Wisconsin, and there is no reason to grant the motion upon this basis.

### C. Interest Of Justice.

In *Adler,* this court reiterated five factors which should be considered in determining whether a change of venue is required in the interest of justice:

> "... (1) the relative ease of access to sources of proof, (2) availability of compulsory process for attendance of unwilling witnesses, (3) the cost of obtaining attendance of willing witnesses, (4) the possibility of a view of the premises, and (5) the state of the court calendars."

*Adler,* 391 F.Supp. at 470 (quoting *Wyandotte Transportation Co. v. Great Lakes Towing Co.,* 196 F.Supp. 494, 496 (E.D.Wis. 1961)). The fourth factor is irrelevant for purposes of this motion, since there are no "premises" involved which could be viewed. The fifth factor must also be eliminated from consideration, since this Court is not apprised of the state of the court calendars in the prospective transferee forum.

The remaining factors pertain to those witnesses who will be called upon to testify at the trial. As the Court has already discussed, this determination is a matter of speculation. It appears certain that some of the witnesses would not be subject to compulsory service of process if the trial was held in Wisconsin, and others would not if the trial was held in Minnesota. Likewise, the cost of transporting willing witnesses, while very much in doubt, would seem to balance out. In any case, it is not a tremendous economic burden to transport a witness to a neighboring state, whether it be from Wisconsin to Minnesota or vice-versa.

This is not an instance where it is clearly more advantageous to transfer an action to another forum rather than try the case where it was originally brought. Absent a showing by the movant that a different forum is clearly more convenient to the parties and witnesses, and that the interests of justice so require it, a change of venue is not warranted. *Adler,* 391 F.Supp. at 469. Courts in this district have stated that the plaintiff's choice of forum is to be accorded "a large measure of deference." *Adler,* 391 F.Supp. at 469; *see also McGraw-Edison Co. v. United States Fidelity & Guaranty Co.,* 322 F.Supp. 1049, 1051 (E.D.Wis.1971). The Court believes that Central National, as the moving party, has not met its burden, and that this failure together with the measure of deference that must be accorded the plaintiff's choice of forum convinces the Court that the action belongs where it was originally brought.

Therefore, the Court hereby denies defendant's motion for change of venue.