**PANSOPHIC SYSTEMS,
INCORPORATED,
Plaintiff,**

v.

**GRAPHIC COMPUTER SERVICE,
INC., Defendant.**

No. 89 C 8668.

United States District Court,
N.D. Illinois, E.D.

April 26, 1990.

J. Patrick Herald, William Lynch Schaller and Mary K. McMahon Dudley, Baker & McKenzie, Chicago, Ill., for plaintiff.

Daniel J. Pope, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the Court is the motion of defendant, Graphic Computer Service, Inc., now known as HCS Support Services, Inc. ("HCS"), to transfer this action to the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. section 1404(a). For the reasons set forth below, the motion is granted.

### I. FACTS

Plaintiff, Pansophic Systems, Inc. ("Pansophic") is an Illinois corporation with its principal place of business located in Lisle, Illinois. On May 31, 1989, Pansophic acquired the Systems Division of Genographics ("Genographics") and thereby succeeded to the business, rights, and interests of Genographics, including all of Genographic's proprietary information, products, and services. HCS is a Texas corporation with its principal place of business located in Houston, Texas. HCS was a direct competitor of Genographics and now, because of Pansophic's acquisition of Genographics, HCS competes directly with Pansophic.

Pansophic's claim arises from HCS' alleged practice of unfairly hiring away Pansophic's employees (including those who were formerly Genographic employees) and thereby acquiring customer lists, as well as proprietary technical information and trade secrets, which belong exclusively to Pansophic. Pansophic's six-count complaint

charges HCS with misappropriation of copyrighted materials, trade secrets, and confidential information, unfair competition, and violation of the Illinois Trade Secrets Act. Ill.Rev.Stat. ch. 140, §§ 351–359 (1989). Pansophic seeks, in addition to compensatory and punitive damages, an accounting and injunctive relief.[1]

## II.  DISCUSSION

■ Section 1404(a) governs the transfer of an action from one district court to another and provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. section 1404(a). Transfer is appropriate under section 1404(a) where the moving party establishes: (1) that venue is proper in the transferor district; (2) that venue and jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 n. 3 (7th Cir.1986). A section 1404(a) transfer requires a lesser showing of inconvenience than was required under the common law doctrine of *forum non conveniens. See Heller Financial, Inc. v. Riverdale Auto Parts*, 713 F.Supp. 1125, 1127 (N.D.Ill. 1989). Moreover, because section 1404(a) does not specify the weight a court must accord each factor, that determination is committed to the sound discretion of the trial judge. *See Coffey*, 796 F.2d at 219.

■ With these standards in mind, the Court examines each of the relevant factors:

### A.  *Venue in This District*

Where jurisdiction is based upon diversity of citizenship alone, a civil action is properly brought in any judicial district in which all plaintiffs reside. 28 U.S.C.

§ 1391(a). For venue purposes, a corporation "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Judicial Improvements and Access to Justice Act, Pub.L.No. 100–702, § 1013(a), 102 Stat. 4642 (1988) (amending 20 U.S.C. § 1391(c) (1988)). Therefore, it follows that venue is proper in this district because jurisdiction is predicated solely on diversity of citizenship and Pansophic's principal place of business is located within this district. Accordingly, the first requirement of section 1404(a) is satisfied.

### B.  *Venue in the Southern District of Texas*

Venue is also proper in the Southern District of Texas and the second requirement of section 1404(a) is satisfied because HCS' principal place of business is located in Houston, Texas, or because the cause of action arose there, or both.

### C.  *Considerations of Convenience and Interest of Justice*

Section 1404(a)'s final requirement mandates that the movant show that the transferee forum is "clearly more convenient" than the transferor district. *Coffey*, 796 F.2d at 219–20. The Court, in determining whether the movant has met this burden, must consider the factors specifically enumerated in section 1404(a) while also giving weight to plaintiff's choice of forum. *Hotel Constructors, Inc. v. Seagrave Corp.*, 543 F.Supp. 1048, 1050 (N.D.Ill.1982).

#### 1.  *Convenience of the Parties*

■ While it is true that plaintiff's forum choice is normally given deference, it is also true that where the chosen forum lacks any significant connection to the claim, the plaintiff's choice becomes only one of the many factors the Court may consider. *General Accidental Insurance Co. v. Travelers Corp.*, 666 F.Supp. 1203 (N.D.Ill.1987). For this reason, it is appro-

---

**1.** All of the facts in the text of this opinion are derived from the complaint and the parties' briefs. The Court notes that Pansophic filed an amended complaint on April 19, 1990, which plaintiff's counsel represented in open court had no effect on the pending motion to transfer. Therefore, the court addresses the complaint only.

priate to discuss Pansophic's choice of forum in connection with the situs of material events which lead to this cause of action.

Pansophic's corporate activities, including the management of Pansophic's Graphics Products Company, into which Genographic was merged in 1989, are conducted in Illinois. The Southern District of Texas, however, has much more significant contacts with this matter. HCS asserts and Pansophic does not deny that most of the action complained of occurred in Houston. That is, many of the clients from whom HCS allegedly pirated Pansophic's software are located in Houston. HCS' training, repair, and research and development facilities, all of which are indirectly implicated in Pansophic's complaint as the site where the misappropriated information is being used, are located in Houston. Moreover, the decisions to both hire away Pansophic and Genographic employees and to copy and use Pansophic's information and software could only have come from HCS corporate headquarters in Houston.

While Pansophic's choice of forum is generally entitled to deference, that deference is reduced by the fact that Texas is the situs of the material events of which Pansophic complains. Plaintiff's preference for an Illinois court has long been accorded "minimal value where none of the conduct complained of occurred in the forum selected by plaintiff. ..." *Chicago Rock Island R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir.1955), *cert. denied,* 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735 (1955).

Whether this litigation is conducted in Texas or Illinois, both parties will be equally inconvenienced if the action is brought in the other's resident district and as a result, the convenience of the parties is not decisive. However, because Texas is the situs of the material events, we conclude that the scales tip strongly in favor of transfer.

### 2. *Convenience of Witnesses*

Each party has identified potential, nonparty witnesses who will be inconvenienced by having to travel to a district forum to testify in this action. However, sheer numbers alone do not accurately reflect the full extent of the "witness convenience" factor. *Bally Manufacturing, Inc. v. Kane,* 698 F.Supp. 734, 738 (N.D.Ill.1988). Rather, the Court must also consider the nature and quality of the testimony as well as whether the witnesses can be compelled to testify, as live testimony of material, nonparty witnesses is preferred. *Id.*

Pansophic plans to call a number of its employees, many of whom are Illinois residents, to substantiate its claims. Likewise, HCS plans to call a large number of its employees, most of whom reside in Texas, to support its defense. Generally, where witnesses are within the control of a particular party, it is likely that those witnesses will appear voluntarily. Such is the case when a party calls its employees as witnesses. *Peach Tree Bancard Corp. v. Peach Tree Bancard Network, Inc.,* 706 F.Supp. 639, 640 (N.D.Ill.1989). As a result, the convenience of employee-witnesses favors no particular forum. Each party's employee-witnesses will be inconvenienced by having to travel to another forum.

The Court is persuaded that this case should be transferred to the Southern District of Texas because of the convenience of the client witnesses who will be called to testify. Pansophic names twelve entities through whom HCS allegedly pirated Pansophic's software or to whom Pansophic allegedly made unauthorized sales. Of those twelve, six are located in Texas. None are located in Illinois. The other entities are located in Florida, New Mexico, Tennessee, California, New York, and Indiana. Thus, the majority of those entities are located more conveniently to Texas. Consequently, the balance of convenience strongly weighs in favor of transfer.

### 3. *Interest of Justice*

Transfer of this case will promote the interests of justice, which embrace traditional notions of judicial economy rather than the private interests of litigants and their witnesses. *See Coffey,* 796 F.2d at 221. First, a diversity case should be decided by a court which is most familiar with the applicable state law. *Espino v. Top*

*Draw Freight System, Inc.*, 713 F.Supp. 1243 (N.D.Ill.1989). In this case, Illinois conflict of law principles dictate that because Texas is the state with the most significant relationship to the controversy, Texas law applies. *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970). Naturally, the Texas court is more familiar with substantive Texas law than is this Court. As for HCS' alleged Illinois Trade Secret Act violation, Illinois law is not so unique as to be beyond the comprehension of the Texas court. The alleged Illinois Trade Secret Act violation is one count of six.

Moreover, the events bear little connection with this forum. The clients from whom HCS allegedly pirated software reside in a number of different states, none of which is Illinois; the employees HCS allegedly hired away worked for Genographics in New York and only two of the seventeen lived in Illinois; the training center where HCS employees were allegedly trained using information misappropriated from Pansophic is in Houston; and HCS' corporate office, where any decision to hire former Pansophic and Genographic employees would have been made, as well as any decision regarding potential clients or the training curriculum, is in Houston. The fact that Pansophic's corporate headquarters are in Illinois and that Pansophic purchased Genographic, does not outweigh the other factors favoring transfer.

## CONCLUSION

For the reasons stated in this order, defendant HCS' motion to transfer pursuant to 28 U.S.C. section 1404(a) is granted. This case is transferred to the United States District Court for the Southern District of Texas, Houston Division.