**FUL INCORPORATED, an Illinois corporation, Plaintiff,**

v.

**UNIFIED SCHOOL DISTRICT NUMBER 204, Defendant.**

No. 92 C 7712.

United States District Court, N.D. Illinois, E.D.

Dec. 17, 1993.

Anita R. Obrand, Law Offices of Anita Obrand, Bannockburn, IL, for plaintiff.

Mark Crane, Jennifer Miles Baratta, Antony S. Burt, Hopkins & Sutter, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the motion of defendant, Unified School District Number 204 ("District 204") to transfer venue to the United States District Court for the District of Kansas, pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the motion is granted.

### I. FACTS

As alleged in the complaint and pleadings, plaintiff FUL Incorporated, is an Illinois corporation with its principal place of business in Illinois. On or about March 4, 1991, defendant District 204, a Kansas municipal body, entered into an equipment lease agreement with FUL for the lease of certain copiers. Under the terms of the equipment lease, District 204 agreed to pay FUL the sum of $2,516.66 per month for sixty months for the lease of six copiers from FUL. It is at this point that the facts, as stated by the parties, differ. Because it is unnecessary to resolve this dispute in order to rule on this motion, each parties' version of the facts is provided.

FUL states that District 204 is in default of the equipment lease executed on or about March 4, 1991, for failure to make the required monthly payments. District 204 counters by alleging that the equipment lease executed on or about March 4, 1991, was cancelled and terminated on or before January 22, 1992, by John Pappert, whom District 204 alleges was FUL's agent.

District 204 states that on or about January 22, 1992, it entered into a lease agreement for various copying equipment with Century Office Products, Inc. ("COPI"), a Kansas Corporation with its principal place of business in Liberal, Kansas, and Kansas City Services, Inc. ("KCS"), also a Kansas Corporation.[1] District 204 states that it entered into the January 22, 1992, lease agree-

---

1. The lease of January 22, 1992, was subsequently assigned to KCS and thereafter assigned by KCS to First National Bank of Shawnee Mission.

ment in reliance upon the prior representations of Pappert that all other lease agreements, including the FUL lease of March 4, 1991, had been terminated, cancelled and made null and void and of no further force and effect.[2]

On October 1, 1992, COPI filed a Chapter 11 petition for bankruptcy. On November 20, 1992, District 204 filed an adversary proceeding in the United States Bankruptcy Court for the District of Kansas seeking, among other things: (1) an order requiring COPI, FUL, General Electric Capital Corporation, KCS and First National Bank of Shawnee Mission to set forth their claims to the copying equipment in possession of District 204 and to any lease payments for such equipment; (2) a determination of the rights of COPI, FUL, General Electric, KCS and the First National Bank to the copying equipment or lease payments at issue; and (3) a declaration that the FUL lease of March 4, 1991, is null and void because of fraudulent inducement, FUL's breach of warranty of title and/or FUL's failure to comply with Kansas law.

On November 23, 1992, FUL filed this action. In this two-count complaint, FUL alleges (1) that District 204 breached its contract with FUL by failing to make the monthly payments on the March 4, 1991, lease and (2) that District 204 fraudulently induced FUL to pay COPI for the equipment covered by the March 4, 1991, equipment lease.

District 204 filed this motion to transfer venue to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1404(a).

## II. DISCUSSION

■ Motions to transfer venue are governed by 28 U.S.C. § 1404(a), which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A section 1404(a) transfer will be granted if the moving party establishes: (1) that venue is proper in the transferor district; (2) that venue and jurisdiction are proper in the transferee district; and (3) that the transfer will serve the convenience of the parties and the witnesses and will promote the interest of justice. *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 219 & n. 3 (7th Cir.1986). The movant must establish that "the transferee forum is clearly more convenient" than the transferor forum in order to be granted its motion. *Id.* at 220. Finally, the district court judge is granted significant latitude in "weighing of factors for and against transfer." *Id.* at 219.

### A. Venue in the Transferor District

■ District 204 concedes that venue is proper in this district because paragraph 13[3] of the March 4, 1991, equipment lease contractually obligates it to consent to personal jurisdiction and venue in the Northern District of Illinois. *See Walter E. Heller & Co. v. James Godbe Co.,* 601 F.Supp. 319, 320–21 (N.D.Ill.1984). For this reason, the Court finds that venue is proper in this district. Therefore, the first element of section 1404(a) has been met.

---

**2.** District 204 further states that on or about May 20, 1992, it entered into an equipment lease for various copying equipment with COPI that was negotiated and signed by Pappert on behalf of COPI. This lease was assigned to General Electric Capital Corporation. District 204 states that it entered into the May 20, 1992, equipment lease in reliance upon the prior representations of Pappert that all prior leases, including the January 22, 1992, lease had been paid in full and were no longer of any force and effect, and were terminated as of May 20, 1992.

**3.** Paragraph 13 of the March 4, 1991, equipment lease reads as follows:
 13. This lease shall be deemed to have been made in Lake County, Illinois, regardless of the order in which the signatures of the parties

shall be affixed hereto. In the event that any litigation or other legal proceedings shall arise under and/or in connection with this Lease and/or the equipment, such litigation or other legal proceeding shall be conducted in federal, state, or local court located within Lake County, Illinois. Furthermore, Lessee consents to jurisdiction and venue in any federal, state, or local court located in Lake County, Illinois and Lessee hereby waives any defenses or objections thereto including defenses based on the Doctrine of Forum Non Conveniens. This Lease shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of Illinois.

## B. Venue in the Transferee District

Venue is proper in actions based solely on diversity of citizenship in "a judicial district where any defendant resides, if all defendants reside in the same State." 28 U.S.C. § 1391(a)(1). Because the transferee district, the United States District Court for the District of Kansas, is the district where District 204, the only defendant in this action, resides, venue and jurisdiction are proper in the transferee district. Thus, the second element of section 1404(a) has been met.

## C. Considerations of Convenience and Interest of Justice

■ The final requirement of section 1404(a) requires the movant to show that the transferee forum is clearly more convenient. *Coffey*, 796 F.2d at 219–20. The court must consider the plaintiff's choice of forum, the convenience of the parties, the convenience of the witnesses and the interest of justice. *Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd.*, 776 F.Supp. 1271, 1276 (N.D.Ill. 1991).

### 1. Plaintiff's Choice of Forum

■ A plaintiff's choice of forum is given considerable weight where it is also the plaintiff's home forum. *Sky Valley*, 776 F.Supp. at 1276 (citing *Gallery House, Inc. v. Yi*, 587 F.Supp. 1036, 1040 (N.D.Ill.1984)). In addition to being FUL's home forum, District 204 has conceded to the application of Illinois law to at least the contract count based on paragraph 13 of the March 4, 1991, equipment lease. As a result, District 204 "bears a heavy burden to show that the inconvenience to the parties and witnesses and the dictates of justice are substantial enough to overcome the presumption in favor of Illinois courts." *Sky Valley*, 776 F.Supp. at 1276 (citing *Bodine's Inc. v. Sunny–O, Inc.*, 494 F.Supp. 1279, 1285 (N.D.Ill.1980)). Therefore, District 204's transfer will not be granted if it merely shifts the burden of litigating out of state to FUL. *Id.* (citing

*Continental Ill. Nat'l Bank & Trust Co. v. Stanley*, 585 F.Supp. 610, 612 (N.D.Ill.1984)).

### 2. Convenience of the Parties and Witnesses

■ The presence of a valid forum selection clause prevents a defendant from asserting its own inconvenience as a reason supporting its motion to transfer.[4] *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir.1989). Because District 204 concedes that it consented to venue and jurisdiction in this district by virtue of paragraph 13 of the March 4, 1991, equipment lease, this factor does not clearly support transfer of this action.

As far as convenience of the witnesses, the parties' different residences make this issue a draw, until third-party witnesses are considered. District 204 has pointed with specificity to a number of non-party material witnesses who are residents of Kansas, for whom the District of Kansas is clearly more convenient, making this factor weigh in favor of transfer.

### 3. Interest of Justice

■ The final section 1404(a) factor "focuses on the efficient administration of the court system, rather than the private considerations of the litigants." *Espino v. Top Draw Freight Sys., Inc.*, 713 F.Supp. 1243, 1245 (N.D.Ill.1989). Interest of justice considerations include the necessity to apply state law, the conservation of judicial resources and the likelihood of an earlier trial. *See id.* In addition, the availability of compulsory process over material witnesses weighs heavily in this analysis. *Walter E. Heller*, 601 F.Supp. at 322.

### (a) Availability of Compulsory Process

■ Because it is generally assumed that witnesses within the control of the party calling them, such as employees, will appear voluntarily, *Peach Tree Bancard Corp. v.*

---

4. Contrary to the assertions of FUL, the forum selection clause does not bar District 204 from seeking a transfer of venue pursuant to 28 U.S.C. § 1404(a). *Walter E. Heller & Co.*, 601 F.Supp. at 321 n. 2. A valid forum selection clause only waives the convenience of the parties factor.

The Court must still determine whether the convenience of the witnesses or the interest of justice clearly support transferring this action to the United States District Court for the District of Kansas. *Id.*

*Peach Tree Bancard Network, Inc.,* 706 F.Supp. 639, 641 (N.D.Ill.1989), the court limits its discussion to potential non-party witnesses. Such non-party witnesses may lie beyond the subpoena power of the transferor court, but may lie within the subpoena power of the transferee court. *Sky Valley,* 776 F.Supp. at 1277. FUL has not identified any potential non-party witnesses [5]; District 204 has identified John Pappert, the former president of COPI and alleged agent of FUL, as well as several current COPI employees and current and former accountants of COPI.

■ When evaluating the availability of compulsory process in a section 1404(a) transfer, courts will first look to see whether the non-party witnesses reside within the subpoena power of either the transferor or transferee court. *See Sky Valley,* 776 F.Supp. at 1277. Next, courts look to the materiality of the testimony to be provided by the non-party witnesses, not merely the number of them. *Cf. Bally Mfg. Corp. v. Kane,* 698 F.Supp. 734, 738 (N.D.Ill.1988). Finally, live testimony is preferred over deposition testimony. *Id.*

In this case, District 204 represents that John Pappert and the other non-party witnesses reside in Kansas, therefore they are outside the subpoena power of this court, but would reside within the subpoena power of the United States District Court for the District of Kansas. *See* FED.R.CIV.P. 45(b), (c)(3)(A)(ii). Therefore, the first part of the compulsory process analysis supports transfer of this motion. However, this determination is not dispositive of the issue of whether the availability of compulsory process clearly supports transfer of this action.

District 204 must establish that the testimony of Pappert and the others is material, and so here asserts their testimony is crucial to establishing that Pappert was FUL's agent. District 204 argues that Pappert was FUL's agent, and therefore he had the authority to terminate the March 4, 1991, equipment lease between District 204 and FUL. In order to determine the materiality of these witnesses' testimony, a review of agency principles is helpful.

■ The determination of whether an agency relationship exists is carried out by reviewing all the facts surrounding the alleged relationship, *Valenti v. Qualex, Inc.,* 970 F.2d 363, 367 (7th Cir.1992), but "[t]he authority of an agent must find its ultimate source in some act or word of the principal, indicative of his intention either express or implied." *In re Englewood Community Hosp. Corp.,* 117 B.R. 352, 360 (Bankr. N.D.Ill.1990) (citations omitted). Thus the testimony of employees of both COPI and FUL will likely aid the trier of fact in determining whether an agency relationship existed between FUL and Pappert. But FUL's ability to put on its case is not compromised by this situation since the employees of FUL are within that company's control. Therefore, on this issue of the presence of potential nonparty witnesses outside the subpoena power of the court, which weighs heavily in a transfer decision, *Sky Valley,* 776 F.Supp. at 1277, the Court finds that District 204 has established that the testimony of Pappert and others clearly supports transfer to the United States District Court for the District of Kansas.

### (b) *Applicable Law*

■ Because jurisdiction in this case is grounded upon diversity of citizenship, state substantive law will apply. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In paragraph 13 of the March 4, 1991, equipment lease, the parties have contractually agreed that Illinois law will govern the breach of contract count. However, the parties are split as to whether

---

**5.** FUL states that its witnesses will be called to refute the testimony of John Pappert. Memorandum in Response to Defendant's Motion to Transfer Venue at 9. The Court assumes that the witnesses FUL intends to call are party witnesses within its control. However, even if this assumption is incorrect, and the witnesses FUL intends to call are non-party witnesses, the result would be the same because FUL has not identified these witnesses with specificity. *Heller Fin.,* 883 F.2d at 1293 (requiring a party "clearly specify the key witnesses to be called" before it can claim that witnesses being out of reach of the trial court is an input to the "interest of justice" analysis).

Illinois or Kansas law will apply to the fraud count.

Regardless of whether Illinois or Kansas law applies to the fraud count, Illinois choice of law rules will be used in this determination. *Providence Hosp. v. Rollins Burdick Hunter of Ill., Inc.*, 824 F.Supp. 131, 133 (N.D.Ill.1993) (citing cases). Without determining which state's law applies to the fraud count, the court concludes that Illinois substantive law will apply to the breach of contract count, and at least its choice of law rules will be applied to the fraud count. Therefore, because Illinois courts are "more conversant" with Illinois law, *Espino,* 713 F.Supp. at 1245, this consideration weighs against transfer of this action to the United States District Court for the District of Kansas.

### (c) *Conservation of Judicial Resources*

Another interest of justice consideration addresses the likelihood that transfer to the transferee district will conserve judicial resources. District 204 asserts that transfer to the United States District Court for the District of Kansas is appropriate because a previously filed adversary proceeding within a bankruptcy action is also in the District of Kansas. District 204 nowhere argues, however, that transferring this action to the District of Kansas will result in its consolidation with the existing bankruptcy action. For the court, this issue of a related cause of action is critical, and so the court ordered the parties to update it on the status of the cause of action. The parties' joint report stated that the bankruptcy court had recommended to the district court that it withdraw reference of the adversary proceeding. Thus, this dispute could end up in the District of Kansas itself, but that issue appears unresolved. Actual consolidation of this case with the adversary proceeding is the primary, but not the only advantage of cases being in the same district. *Bally Mfg.,* 698 F.Supp. at 739. Especially here, where the two cases involve the same contract, transfer is warranted so those advantages can be realized.

### (d) *Status of the Dockets*

District 204 also asserts that the interest of justice would be served by transferring this action to a less congested docket. To support this assertion, District 204 cites two statistics from the Federal Court Management Statistics Report for the twelve months ending June 30, 1991. The quoted statistics are: (1) weighted case filings per judge; and (2) the number of civil cases over three years old. This report indicates that: (1) the weighted case filings per judge in the District of Kansas was 314 and in the Northern District of Illinois was 491; and (2) the number of civil cases over three years old in the District of Kansas was 89 while the number in the Northern District of Illinois was 660.[6] Therefore, District 204 asserted that " 'measured in terms of docket congestion and prospects for an earlier trial,' the District of Kansas is the preferred forum." Memorandum of Law in Support of Defendant's Motion to Transfer Venue at 14 n. 6.

However, the statistics cited by District 204 do not paint the entire picture. The same report cites the following statistics for each of those categories: (1) the median number of months from filing to disposition of civil cases in the District of Kansas was 12 and in the Northern District of Illinois was 4; and (2) the median number of months from issue to trial in civil cases in the District of Kansas was 19 and in the Northern District of Illinois was 13. Thus, according to these statistics, the prospects of an earlier trial could lie within this district.

The conflicting statistics cannot adequately predict whether the District of Kansas or the Northern District of Illinois will result in a speedier trial for these litigants. *See Mechanical Sys. Inc. v. Cadre Corp.,* 567 F.Supp. 948, 952 n. 5 (N.D.Ill.1983). These statistics do not clearly support or militate against transfer.

### D. *Resolution*

The Court finds that the interest of justice is too well served by transfer to deny the

---

**6.** However, absolute numbers are misleading when evaluating the number of civil cases over three years old because this district has signifi- cantly more judges than the District of Kansas. Nonetheless, on a per judge basis, this district still has more civil actions over three years old.

motion. While the forum selection clause waives defendant's own convenience argument, defendant has established convenience of the witnesses favors transfer, and it makes no sense to allow simultaneous causes of action to proceed in separate districts, especially where, as here, the transferee forum's subpoena power will better serve the interest of justice than the transferor court's. *See Coffey,* 796 F.2d at 220 ("The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." (citations omitted)). The choice of law issue tends to favor denial of transfer, but does not outweigh the above considerations, especially here where the legal basis of the claim appears to be entirely straightforward.

## III. CONCLUSION

The court having considered all relevant factors relevant to the determination, defendant's motion to transfer venue in this case to the United States District Court for the District of Kansas, Kansas City Division, pursuant to 28 U.S.C. § 1404(a) is granted.