851 F.Supp. 1265 (1994)
HARLEY-DAVIDSON, INC., Plaintiff,
v.
COLUMBIA TRISTAR HOME VIDEO, INC., New Line Cinema Corp., and New Line Home Video, Defendants.
No. 93-C-428.
United States District Court, E.D. Wisconsin.
May 3, 1994.
*1266 Fred Wiviott, Michael E. Husmann, Dyann L. Bumpke, Jonathan H. Margolies, Michael, Best & Friedrich, Milwaukee, WI, for plaintiff.
Gary A. Essmann, Andrus, Sceales, Starke & Sawall, Milwaukee, WI, Joseph J. Santora, Larry Greenfield, Santora & Greenfield, New York City, for defendants.

DECISION AND ORDER
WARREN, District Judge.
On April 28, 1993, plaintiff Harley-Davidson, Inc. ("Harley-Davidson"), filed a complaint in the Eastern District of Wisconsin which, as amended on May 20, 1993, alleges that Columbia Tristar Home Video ("Columbia Tristar"), New Line Cinema Corp. ("New Line Cinema"), and New Line Home Video, Inc. ("New Line Home Video") (collectively the "defendants") used Harley-Davidson's registered trademark of the "Bar and Shield" design (the "Logo") in connection with the sale and advertising of a videocassette version of a film entitled Roadside Prophets, in violation of 15 U.S.C. §§ 1114-1118 & 1125 and common law governing trademark infringement and unfair competition. (Amended Complaint at ¶¶ 16-21.) Specifically, the alleged infringement consisted of the defendants placing a design, which Harley-Davidson claims is identical to the Logo except that it contains not the name of Harley-Davidson but rather the names of the lead actors in the film, in advertisements for the videocassette and on the videocassette box, (id. at ¶ 12), with the intent to trade on Harley-Davidson's reputation and goodwill, creating the likelihood of confusion, mistake and deception as to the source or sponsorship of the film. (Id. at ¶¶ 12-15.) Now before the Court is the defendants' motion to dismiss or transfer venue, for improper venue, pursuant to Rule 12(b)(3), Fed.R.Civ.P., and 28 U.S.C. § 1406(a), or, in the alternative, to transfer venue to the Southern District of New York, for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). Also before the Court is defendants' motion pursuant to Section 5.06(c), Local Rules, to seal certain supporting affidavits. For the following reasons, we deny both motions.

I. Background
Harley-Davidson is a Wisconsin corporation headquartered in Milwaukee, Wisconsin. (Brief in Opposition at 2.) Columbia Tristar is a New York partnership between CPT Holdings, Inc. and Columbia Pictures Home Video, both Delaware corporations and subsidiaries of Sony Pictures Entertainment, a Delaware corporation based in California. *1267 (David Pierce[1] Aff. at ¶ 2.) New Line Cinema is a Delaware corporation with its principal and executive offices in New York, New York. Its wholly-owned subsidiary, New Line Home Video, is a California corporation with its executive offices in New York, New York and principal offices in New York, New York and Los Angeles, California. (Benjamin Zinkin[2] Aff. at ¶ 2.)
New Line Home Video produces and distributes videocassettes and videodiscs for home viewing. (Id. at ¶ 4.) Pursuant to an agreement between New Line Home Video and RCA/Columbia Pictures Home Video (a New York partnership which was the predecessor in interest to Columbia Tristar) entered into on or about March 1, 1991 (the "Services Agreement"), Columbia Tristar has performed services for New Line Home Video in the sales and distribution for the home video market of certain films provided to Columbia Tristar by New Line Home Video. The Services Agreement was entered into in New York and provides that New York law governs its performance and construction. (Id. at ¶ 4.)
Roadside Prophets is one of the films provided by New Line Home Video and serviced by Columbia Tristar pursuant to the Services Agreement. (Zinkin Aff. at ¶ 4.) Columbia Tristar's domestic (United States and Canada) responsibilities with respect to the videocassette of Roadside Prophets were limited to sales-related activities, e.g., sales order-taking, packing and shipping, billings, collections, handling returns and credits, inventory taking, credit checking, sales reports, customer purchase analyses, and other similar services, (Pierce Aff. at ¶¶ 4, 5; Zinkin Aff. at ¶ 5), and distribution through its own network of eleven independent distributors. (Pierce Aff. at ¶ 5; Zinkin Aff. at ¶ 5.)
The artwork for and packaging of the videocassette of Roadside Prophets was created and otherwise handled by New Line Home Video, which delivered the materials to Columbia Tristar for ultimate shipment to its outside distributors. Copy and artwork for promotional materials for the videocassette also were provided by New Line Home Video. (Zinkin Aff. at ¶ 5.)[3] None of the creation or production of any of the allegedly infringing product occurred in Wisconsin. (Pierce Aff. at ¶ 2; Zinkin Aff. at ¶¶ 2, 3.)
Roadside Prophets was released on videocassette in 1992 and enjoyed limited commercial success. A total of 8,071 copies of the videocassette of the film were shipped by Columbia Tristar for ultimate sale by outside distributors throughout the United States; of these, 120 copies of the videocassette were shipped into the State of Wisconsin. (Pierce Aff. at ¶ 7; Zinkin Aff. at ¶ 6.) More than 550 copies of the videocassette were shipped for sale in New York and New Jersey. (Pierce Aff. at ¶ 7.) The gross revenue generated to Columbia Tristar from the 120 videocassettes was approximately $7,020. (Id.) The revenue generated to New Line Home Video from the 120 videocassettes was approximately $6,800, or approximately 1.30 percent of the total revenue generated by the Roadside Prophets videocassette. (Zinkin Aff. at ¶ 6.) From March 1992 through February 1993, Columbia Tristar's net sales revenue exceeded $500 million. During the 1992 calendar year, Columbia Tristar's net revenue attributable to shipments into Wisconsin was $44,000, or approximately 0.008 percent of its 1992 fiscal year sales revenue. (Pierce Aff. at ¶ 8.) During 1992, 0.65 percent of New Line Cinema's total revenue for distribution in the United States of all home video product came from sales into Wisconsin. (Zinkin Aff. at ¶ 7.)[4]
*1268 Columbia Tristar has three field salespeople in the vicinity of Wisconsin, two in Illinois and one in Minnesota, in which states they respectively reside. Prior to November 1992, one such salesperson was responsible for working with the Wisconsin branch of one of Columbia Tristar's independent distributor. As such, the salesperson conducted sales meetings with that branch and contacted retailers in Wisconsin once every four to six weeks. Another salesperson took over this responsibility in November 1992, and visits Wisconsin once every six weeks. (Pierce at ¶ 6.)
None of the defendants is incorporated or licensed to do business in Wisconsin; owns, rents or leases any property in Wisconsin; or has any employees, bank accounts, telephone listings or post office boxes in Wisconsin. (Id. at ¶ 2; Zinkin Aff. at ¶ 3.) None of Columbia Tristar's independent distributors is headquartered, and only one of them has a branch office, in Wisconsin. (Pierce Aff. at ¶ 5.) At least five of the eleven distributors have branch offices in the New York metropolitan area; one of them has its corporate offices there. (Id.)[5]
Harley-Davidson's books and records relevant to this action are located in Wisconsin. (Wood Aff. at ¶ 5.) Columbia Tristar's books and records relevant to this action are located primarily in California (some may be in other regional offices); none are located in Wisconsin. (Id. at ¶ 2.) New Line Cinema's and New Line Home Video's books and records relevant to this action are located predominately in New York; none are located in Wisconsin. (Zinkin Aff. at ¶ 3.)
The known possible witnesses for Harley-Davidson are employed and reside in Wisconsin. (Wood Aff. at ¶ 5.) The known possible witnesses for Columbia Tristar are employed and reside in California and New York. (Id. at ¶ 9.) The known possible witnesses for New Line Cinema and New Line Home Video, as to the artwork, packaging and promotions; the revenues from sales; and their relationship with Columbia Tristar, are officers and employees in its offices predominately in New York (but to some extent in California). (Id. at ¶ 8.)

II. Discussion
As this case arises under the Lanham Act, 15 U.S.C. § 1051, et seq., the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338.[6] The defendants' motion to dismiss for improper venue is authorized by Rule 12(b)(3).[7]
The question of proper venue is solely a matter of federal law. Leroy v. Great Western United Corp., 443 U.S. 173, 183 n. 15, 99 S.Ct. 2710, 2716 n. 15, 61 L.Ed.2d 464 (1979). Pursuant to Section 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or *1269 district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Where, as here, jurisdiction is not based solely on diversity of citizenship, venue properly lies:
... only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.
28 U.S.C. § 1391(b). For the purposes of Section 1391(b), a corporate[8] defendant "shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced," 28 U.S.C. § 1391(c), a mandate that must be accorded its plain meaning. Dakota Industries, Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir.1991) (citing VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1580 (Fed.Cir.1990), cert. denied, 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991)); Braden Shielding Systems, Inc. v. Shielding Dynamics of Texas, 812 F.Supp. 819, 821-22 (N.D.Ill.1992).
When a federally created right is at issue, our exercise of personal jurisdiction generally must comport with the Wisconsin long-arm statute, Wis.Stat. § 801.05, which must be liberally construed in favor of the exercise of jurisdiction, Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co., 18 F.3d 389 (7th Cir.1994), and with the due process clause of the Fifth Amendment. Hayeland v. Jacques, 847 F.Supp. 630, 631 (E.D.Wis.1994) (Randa, J.); Brunswick Corp. v. Suzuki Motor Co., Ltd., 575 F.Supp. 1412, 1416 n. 2 (E.D.Wis.1983) (Reynolds, C.J.). Here, the evidence demonstrates that the defendants were "engaged in substantial and not isolated activities within this state," Wis. Stat. § 801.05(1)(d), and that "[p]roducts ... serviced or manufactured by the defendant[s] were used or consumed within this state in the ordinary course of trade." Wis.Stat. § 801.05(4).[9] In addition, the defendants have significant national contacts. Nothing more is required. See Hayeland, 847 F.Supp. at 633-634 (relying on United Rope Distributors, Inc. v. Seatriumph Marine Corp., 930 F.2d 532, 536 (7th Cir.1991)); Lisak v. Mercantile Bancorp, Inc., 834 F.2d 668, 671-72 (7th Cir.1987), cert. denied, 485 U.S. 1007, 108 S.Ct. 1472, 99 L.Ed.2d 700 (1988). See also Handley v. Indiana & Michigan Elec. Co., 732 F.2d 1265, 1269 (6th Cir.1984). In any event, we note, the defendants effectively have waived any jurisdictional defense by failing to join it in the present motion. Fed.R.Civ.P. 12(h)(1). See Pillar Corp. v. Enercon Industries Corp., 1989 WL 77667, *1 (E.D.Wis.1989) (Stadtmueller, J.). Whereas we thus have personal jurisdiction over the defendants, they are deemed to reside, and venue properly lies, in the Eastern District of Wisconsin.[10] The *1270 defendants' motion to dismiss or transfer pursuant to Section 1406(a), therefore, will be denied.
Even when venue properly lies, however, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Plainly, this action might have been brought in the Southern District of New York. The evidence demonstrates that the defendants, at the very least, "transact[] ... business within the state," N.Y.Civ.Prac. L. & R. § 302(a)(1), and "own[ ], use[ ], or possess[ ] real property within the state." N.Y.Civ. Prac. L. & R. § 302(a)(4). Thus subject to its exercise of personal jurisdiction, the defendants are deemed to reside in the Southern District of New York, where venue properly lies pursuant to Section 1391(b). The only issue is thus whether the defendants have demonstrated that the Southern District of New York is "clearly more convenient." Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1293 (7th Cir.1989) (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-20 (7th Cir.1986)); FUL, Inc. v. Unified School Dist. No. 204, 839 F.Supp. 1307, 1311 (N.D.Ill.1993); Pansophic Systems, Inc. v. Graphic Computer Service, Inc., 736 F.Supp. 878, 880 (N.D.Ill. 1990); Kelley Co., Inc. v. Central Nat. Ins. Co. of Omaha, 598 F.Supp. 350, 353 (E.D.Wis.1984) (Warren, J.). They have not.
In evaluating the convenience and fairness of transfer pursuant to Section 1404(a), we consider both private and public interests. Medi USA, L.P. v. Jobst Institute, Inc., 791 F.Supp. 208, 210 (N.D.Ill.1992); Heller Financial, Inc. v. Riverdale Auto Parts, Inc., 713 F.Supp. 1125, 1129 (N.D.Ill. 1989). Private interest considerations include the plaintiff's choice of forum, the situs of material events, the relative ease of access to sources of proof in each forum, and the convenience to the parties relative to their respective residences and abilities to bear the expense of trial in a particular forum. Medi USA, 791 F.Supp. at 210; Kinney v. Anchorlock Corp., 736 F.Supp. 818, 829 (N.D.Ill. 1990) (citing Letter-Rite, Inc. v. Computer Talk, Inc., 605 F.Supp. 717, 720 n. 3 (N.D.Ill. 1985)); Heller Financial, 713 F.Supp. at 1129; Cook v. International Harvester Co., 610 F.Supp. 271, 275 (E.D.Wis.1985) (Warren, J.). Public interest considerations include judicial economy, the expedient administration of justice, and the availability of compulsory process over material witnesses. See FUL, 839 F.Supp. at 1311; Medi USA, 791 F.Supp. at 210; Northwestern National Insurance Co. v. Frumin, 739 F.Supp. 1307, 1311 (E.D.Wis.1990) (Reynolds, J.); Kinney, 736 F.Supp. at 829; Munski v. J.R. United Industries, Inc., 756 F.Supp. 379, 381 (N.D.Ind.1989); Cook, 610 F.Supp. at 275.
The defendants argue that transfer of this action to the Southern District of New York is supported by considerations as to the availability of compulsory process over material witnesses and the situs of material events. (Defendants' Motion at 19-23.) While we must consider, however, whether non-party witnesses, whose live testimony is favored, Coats Co., Inc. v. Vulcan Equipment Co., Ltd., 459 F.Supp. 654, 658 (N.D.Ill.1978), lie beyond our subpoena power, see Ful, 839 F.Supp. at 1312 (relying on Sky Valley Ltd. Partnership v. ATX Sky Valley, Ltd., 776 F.Supp. 1271, 1276 (N.D.Ill.1991)), the defendants have not, (Defendants' Motion at 21), "clearly specif[ied] the key witnesses to be called ...," see Ful, 839 F.Supp. at 1312 & n. 5; Heller Financial, 883 F.2d at 1293, and we can thus make no more than a speculative assessment of the materiality of their testimony. Cf. Ful, 839 F.Supp. at 1312 (relying on Bally Mfg. Corp. v. Kane, 698 F.Supp. 734, 738 (N.D.Ill.1988)); Munski, 756 F.Supp. at 380 ("nature and quality of their testimony"). To whatever extent the material events of a trademark infringement case revolve around any specific situs, cf. Medi *1271 USA, 791 F.Supp. at 210 (patent infringement action), moreover, both New York, from whence the alleged infringers conduct most of their business, and Wisconsin, where the alleged "passing off" occurred, are sitae of material events underlying this action. Cf. Heller Financial, 713 F.Supp. at 1128.
Other considerations, we note, are either inapplicable, e.g., relative familiarity with applicable state law, and relation of the community to the occurrence at issue; inconclusive, e.g., access to sources of proof other than witnesses, convenience relative to residences and abilities to bear expenses, and conservation of judicial resources; or actually support laying venue in the Eastern District of Wisconsin. Although it commands less deference in modern jurisprudence than it would have under forum non conveniens analysis at common law, Kinney, 736 F.Supp. at 828 n. 10 (citing Trademasters Intern., Inc. v. Borer, 687 F.Supp. 434, 435 (N.D.Ill.1988)); see also Medi USA, 791 F.Supp. at 210 ("usually not a dominant factor"), for instance, the plaintiff's choice of forum is nevertheless accorded substantial weight, see, e.g., Kinney, 736 F.Supp. at 828 n. 10; Munski, 756 F.Supp. at 380; Cook, 610 F.Supp. at 274-75; Kelley, 598 F.Supp. at 353; Ronco, Inc. v. Plastics, Inc., 539 F.Supp. 391, 401 (N.D.Ill. 1982), particularly where the plaintiff resides in the chosen forum. FUL, 839 F.Supp. at 1311. Cf. Kinney, 736 F.Supp. at 828 n. 10; Countryman on Behalf of Upstate New York Pension and Retirement Fund v. Stein Roe & Farnham, 681 F.Supp. 479, 482 (N.D.Ill. 1987); Cinema Systems, Inc. v. Lab Methods Corp., 545 F.Supp. 403 (N.D.Ill.1982). Harley-Davidson, of course, has chosen, and resides in, the Eastern District of Wisconsin. In addition, we take judicial notice of the fact that the Southern District of New York is inundated with litigation, and conclude that our docket is likely to permit an earlier trial of this matter. On balance, therefore, we find no compelling reason to transfer this action to the Southern District of New York, and will also deny the defendants' motion pursuant to Section 1404(a).
Finally, finding that the defendants fail to even address, much less sustain, their burden to show good cause why the requested protection order be entered, i.e., that there exists a trade secret, as defined in Minuteman, Inc. v. Alexander, 147 Wis.2d 842, 434 N.W.2d 773 (1989); see also Nalco Chem. Co. v. Hydro Technologies, Inc., 984 F.2d 801 (7th Cir.1993), we decline to grant the defendants' motion to seal the Pierce and Zinkin affidavits.

III. Order
Now, therefore, in light of the foregoing, it is hereby ordered that:
(1) the defendants' motion to dismiss or transfer venue to the Southern District of New York, for improper venue, pursuant to Rule 12(b)(3), Fed.R.Civ.P., and 28 U.S.C. § 1406(a), or, in the alternative, to transfer venue to the Southern District of New York, for the convenience of the parties and witnesses and in the interest of justice, pursuant to 28 U.S.C. §§ 1404(a) or 1406(a), be denied;
(2) the defendants' motion to seal be denied;
(3) a teleconference, to be initiated by Harley-Davidson, be held at 1:30 p.m., Thursday, May 12, 1994, for the purpose of scheduling further proceedings in this matter.
So ordered.
NOTES
[1] David Pierce is Senior Vice President-Sales of Columbia Tristar. (Pierce Aff. at ¶ 1.)
[2] Benjamin Zinkin is Senior Vice President, Business Affairs, of New Line Cinema. (Zinkin Aff. at ¶ 1.)
[3] According to Harley-Davidson, the defendants advertised the videocassette to both consumers in video stores and distributors in Wisconsin and other states. (William W. Wood, Jr. (Manager of Trademark Enforcement at Harley-Davidson) Aff. at ¶ 4, Exh. C; Plaintiff's Brief at 2.) According to the defendants, however, they never made or placed any consumer advertisements anywhere. Instead, they contend, a promotional brochure for distributors, and not intended for consumers, was made for delivery to Columbia Tristar, and from it ultimately to its outside distributors. (Pierce Aff. at ¶¶ 4, 5; Zinkin Aff. at ¶ 5.)
[4] Harley-Davidson attests that of the approximately 100 videocassette covers displayed in the new release section of the Blockbuster Video store located at 7690 West Appleton Avenue in Milwaukee, Wisconsin (one of fifteen such stores in metropolitan Milwaukee, Wisconsin), nineteen contained information indicating that the videocassettes therein had been distributed by Columbia Tristar, and seven indicated that the videocassettes therein had been distributed by New Line Home Video or Columbia Tristar and New Line Home Video collectively. (Judith A. Henslee (a paralegal employed by Harley-Davidson's counsel) Decl. at 2-4.) Additionally, two copies of Roadside Prophets were available for rent at Bucky's video on East Oklahoma Avenue in Milwaukee, Wisconsin. (Wood Aff. at ¶ 3.)
[5] The defendants allege that there are at least twenty-seven Harley-Davidson-related entities in New York, including Harley-Davidson of New York City, Inc.; Harley-Davidson of New York, N.Y., Inc.; Brooklyn Harley-Davidson Sales Corp.; Metropolitan Harley-Davidson Dealers Association, Inc.; Brewster Harley-Davidson Sales, Inc.; Darryl's Harley-Davidson Sales, Inc.; New York State Harley-Davidson Dealers Association, Inc. (Larry S. Greenfield (co-counsel for defendants) Aff. at ¶ 3.) According to Harley-Davidson, however, Brewster and Darryl's, two of Harley-Davidson's 600 independent dealers nationwide, are, like the dealers and owners associations, neither owned by Harley-Davidson nor have any connection to this dispute. (Wood Aff. at ¶ 6, 7.)
[6] Section 1338 states, in relevant part:

(a) The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... trademarks ....
(b) The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the ... trademark laws.
28 U.S.C. § 1338.
[7] Rule 12(b)(3) states, in relevant part, that "[e]very defense ... to a claim for relief in any pleading ... shall be asserted in the responsive pleading except that the following defenses may at the option of the pleader be made by motion: ... (3) improper venue...." Fed.R.Civ.P. 12(b)(3).
[8] The same standard applies to a partnership. See Injection Research Specialists v. Polaris Industries, L.P., 759 F.Supp. 1511 (D.Colo.1991).
[9] In support of their arguments both for dismissal and transfer, the defendants assert that their contacts with this forum are insubstantial, and rely on, inter alia, Virgin Air, Inc. v. Virgin Atlantic Airways, Ltd., 1992 WL 73522, 1992 U.S.Dist. LEXIS 5544 (N.D.Ill.1992), and International Comfort Products, Inc. v. Hanover House Industries, Inc., 739 F.Supp. 503 (D.Ariz.1989). We find, however, that in this factual context, such reliance is misplaced. The evidence demonstrates that in the national distribution of Roadside Prophets, not even New York and New Jersey collectively received a "substantial" percentage of the total distribution. If adopted in this context, therefore, the defendants' argument would seem to preclude laying venue anywhere, see Johnson Creative Arts, Inc. v. Wool Masters, Inc., 743 F.2d 947, 955 (1st Cir.1984) (refusing to lay venue where six to fourteen percent of defendant's total sales occurred) (cited by the defendants), a result both absurd and unjust. Here, the evidence demonstrates that 120 videocassettes meant for continuous display and thousands of viewings were distributed in Wisconsin, and suggests that the defendants have, in general, significant market share in the Wisconsin videocassette market. Nothing more is required.
[10] We base our finding on the first, rather than the second, element of Section 1391(b). As such, the defendants' authority as to where a claim arises for the purpose of a trademark infringement action, (Defendants' Motion at 9-13), is inapposite. The defendants themselves assert that John Walker & Sons, Ltd. v. DeMert & Dougherty, Inc., 821 F.2d 399, 405-07 (7th Cir. 1987), applies to "Lanham Act trademark infringement actions in which the defendant does not reside in the judicial district...." (Defendants' Motion at 9 (emphasis added).) In any event, Section 1391(b), as amended in 1990, effectively disapproved the Leroy Court's admonition against recognizing multiple venues, Bates v. C. & S. Adjusters, Inc., 980 F.2d 865, 867 (2d Cir.1992), upon which the defendants' authority rests. See, e.g., Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurants, 760 F.2d 312, 317 (D.C.Cir.1985) (applying the Leroy test); Heinz v. Frank Lloyd Wright Foundation, 773 F.Supp. 1219 (W.D.Wis.1991) (interpreting Leroy to support application of the "weight of the contacts test").