DECISION AND ORDER

WARREN, Senior District Judge.
Before the Court is the defendant’s Motion to Dismiss or for Summary Judgment in the above-captioned matter. For the following reasons, the Court orders dismissal of this ease for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) (“Rule 12(b)(1)”).
I. FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff Allen R. McCulley served in the United States Army from 1948 to 1962, when he was honorably discharged. (Maddox Aff. *1274 at ¶ 3.) From 1968 to 1977, he filed numerous claims for compensation with defendant United States Department of Veteran’s Affairs (“VA”) for alleged service-connected medical conditions, (Id. at ¶ 1.);[1] he presently receives compensation for arterial hypertension evaluated as 20% disabling, chronic lumbosacral strain evaluated as 20% disabling, and atrophic left testicle due to mumps with orchiditis evaluated as 0% disabling.[2] (Id.) On April 10, 1975, the plaintiff underwent surgery to remove a “small leiomyoma” on his esophagus; the attending physician noted the presence of “a small hiatal hernia on gastrointestinal series without demonstrable reflux.” (PI. Mem. Opp’n Summ. J., Ex. 2.) On May 7, 1975, the plaintiff returned to the VA complaining of low back pain, weakness in his right arm, and “right vocal cord paralysis.” (Id. at Ex. 2-A.) In February of 1982, he expressed to the VA his desire to establish service-connection for paralysis of the right vocal cord secondary to such surgery. (Maddox Aff. at ¶ 4, Ex. 1.) In June of 1982, the VA issued a Rating Decision holding that service-connection for such condition was not established under 38 U.S.C. § 351 (currently renumbered § 1151); the plaintiff filed a notice of disagreement. (Id.) In March of 1983, the plaintiff amended his claim to include service-connection for an adjunct condition, diabetes; in February of 1984, the VA issued a Rating Decision denying establishment of a service-connection for such condition. (Id.)
*1275 In April of 1988, the plaintiff filed three separate actions in Milwaukee County Circuit Court against various VA employees, two of which were immediately removed to the United States Court for the Eastern District of Wisconsin; the United States was substituted as defendant, and an amended complaint was filed alleging “defamation of character with malice aforethought” and a “false rating decision of 1974.” (Def. Mem. Supp. Summ. J., Ex. A.) After a September 1988 status conference, the parties agreed to send the plaintiff’s records to a VA Regional Office other than Wisconsin for evaluation. (Id., Ex. B.) On December 29, 1988, the Washington D.C. VA Regional Office issued a Rating Decision finding that “all rating decisions completed during the period 1974 through 1976 are consistent with the medical evidence,” (Maddox Aff. at ¶ 5, Ex. 2); however, it also noted the “adult onset of diabetes mellitus, hiatal hernia with fair control, dysphagia and recurrent laryngeal nerve injuries due to previous esophageal surgery.” (PI. Mem. Opp’n Summ. J., Ex. 1-A.) The third above-referenced state action was removed to the United States District Court for the Eastern District of Wisconsin in June of 1989 and consolidated with the other two cases; the United States was again substituted as defendant. (Def. Mem. Supp. Summ. J., Ex. C.) The United States moved for, and was granted, summary judgment. (Id.) The Seventh Circuit affirmed, McCulley v. United States, 929 F.2d 703 (7th Cir.1991), and the United States Supreme Court denied certiorari. McCulley v. United States, — U.S. -, 112 S.Ct. 207, 116 L.Ed.2d 165 reh’g denied, — U.S. -, 112 S.Ct. 627, 116 L.Ed.2d 648 (1991).
On February 4, 1992, the plaintiff requested disability compensation from the VA under § 1151 for “residuals of esophageal surgery performed by the VA Hospital—Milwaukee in 1975”; he submitted additional documents on February 19, 1992 asking to “reopen [his] claim for service-connect[ed] ... laryngeal nerve injury due to esophageal surgery” and requesting “compensation for diabetes, and a hiatal hernia in addition to service-related low back pain.” (Maddox Aff. at ¶ 6, Ex. 3-4.) On March 11, 1992, the VA notified the plaintiff that it was suspending the adjudication of all claims involving a potential denial of service-connection disabilities until the Court of Appeals for the Federal Circuit reviewed the United States Court of Veterans Appeals decision in Gardner v. Derwinski, 1 Vet.App. 584 (1991), which invalidated a provision in 38 C.F.R. § 3.358 used by the VA in deciding § 1151 claims. (Id. at ¶ 7-8, Ex. 5-7.) On February 25 and April 6, 1993, the VA notified the plaintiff that his claim remained suspended pending an appellate ruling in Gardner. (Id. at ¶ 9, Ex. 8-9.)[3]
On April 22, 1993, the plaintiff, acting pro se, brought the instant action against the VA and Douglas A. Wallin, Adjudication Officer for the Wisconsin VA Regional Office, alleging that he suffers the following ten (10) disabilities due to complications from his esophageal surgery: “1. recurrent laryngeal nerve injuries, 2. paralysis of right vocal cord, 3. hiatal hernia, 4. dysphagia, 5. gastroenteritis, 6. diverticulitis, 7. diabetes melli-tus, 8. psychophysiologieal reaction manifested by anxiety with somatic complaints, 9. function bowel syndrome and 10. interverte-bral disc syndrome.” According to the plaintiff, the defendants’ refusal to comply with § 1151 violates his Fourteenth Amendment right to Equal Protection, and he seeks “service-connected disabilities compensation for injuries, the residual of injuries and aggravation of an injury as the result of hospitalization, medical and surgical treatment, ... [and damages for] suffering, grave grievous, mental anguish and pain, lost [sic] of job, ... and punitive damagefs].” (Compl. at 4.) On June 22, 1993, the defendants filed the instant motion; the plaintiff responded on July 14, 1991, and the defendants replied on July 28, 1993.[4]
*1276 II. STANDARD OF REVIEW
“Rule 12(b)(1) requires that an action be dismissed if the court lacks jurisdiction over the subject matter of the lawsuit.” Unity Sav. Ass’n v. Federal Sav. & Loan Ins. Corp., 573 F.Supp. 137, 140 n. 4 (N.D.Ill.1983). When ruling on such a motion, the Court “is not bound to accept as true the allegations of the complaint which tend to establish jurisdiction where a party properly raises a factual question concerning the jurisdiction of the ... court to proceed with the action.” Grafon Corp. v. Hausermann, 602 F.2d 781, 783 (7th Cir.1979); Chicago Dist. Council of Carpenters Pension Fund v. Kustom Line Garage Door Co., 1989 WL 152531 (N.D.Ill. Dec. 11, 1989). Instead, the Court should “look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the issue in determining whether in fact subject matter jurisdiction exists.” Grafon, 602 F.2d at 783; Chicago Dist., 1989 WL 152531, at *1. Where subject matter jurisdiction is at issue, “the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof.” Grafon, 602 F.2d at 783; Geiger v. United States, 1989 WL 31100 (N.D.Ill. March 28, 1989). See also Western Transp. Co. v. Couzens Warehouse & Dist., Inc., 695 F.2d 1033, 1038 (7th Cir.1982); Nuclear Eng’g Co. v. Scott, 660 F.2d 241, 252 (7th Cir.1981). Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion cannot “evolve into a dismissal [for summary judgment] pursuant to Rule 56.” Capitol Leasing Co. v. Federal Deposit Ins. Corp., 999 F.2d 188, 191 (7th Cir.1993); Crawford v. United States, 796 F.2d 924, 928 (7th Cir. 1986).
Rule 12(b)(6) authorizes the Court to dismiss a case “for failure to state a claim upon which relief can be granted.” Unlike a Rule 12(b)(1) motion, the Court must accept as true all well-pleaded factual allegations contained in the plaintiffs complaint, viewing all reasonable inferences in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984); Gillman v. Burlington N. R.R. Co., 878 F.2d 1020, 1022 (7th Cir.1989); Republic Steel Corp. v. Pennsylvania Eng’g Corp., 785 F.2d 174, 177 n. 2 (7th Cir.1986). The complaint, however, must set forth factual allegations adequate to establish the essential elements of his or her claim, see Benson v. Cady, 761 F.2d 335, 338 (7th Cir.1985); Sutliff, Inc. v. Donovan Co., Inc., 727 F.2d 648, 654 (7th Cir.1984), and legal conclusions lacking adequate support should not be considered. Benson, 761 F.2d at 338. The Court must deny such a motion unless it appears beyond doubt that the plaintiff is unable to prove any set of facts which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957); Benson, 761 F.2d at 338. The Court’s inquiry is generally limited to the factual allegations contained within the four corners of the complaint, see, e.g., Hill v. Trustees of Indiana Univ., 537 F.2d 248, 251 (7th Cir.1976); however, “[i]f ... matters outside the pleading are presented to and not excluded by the court,” a Rule 12(b)(6) motion must be treated as a Rule 56 Motion for Summary Judgment. See Capitol Leasing, 999 F.2d at 191; R.J.R. Services, Inc. v. Aetna Casualty and Sur. Co., 895 F.2d 279, 281 (7th Cir.1989); Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir.1987).
Rule 56(c), in turn, deems summary judgment appropriate “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists only where a reasonable jury could make a finding in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Santiago v. Lane, 894 F.2d 218, 221 (7th Cir.1990). An issue of fact must also be material, as “only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.” Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. See also Clifton v. Schafer, 969 F.2d 278, 281 (7th Cir.1992); Local 1545, United Mine Workers of Am. v. Inland Steel Coal Co., 876 F.2d 1288, 1293 (7th Cir.1989). The presence of a genuine issue of material fact is to be determined by the substantive law control *1277 ling that ease or issue. Anderson, 477 U.S. at 254-55, 106 S.Ct. at 2518-14; Santiago, 894 F.2d at 221. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine need for trial and summary judgment is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).
The moving party has the initial burden of demonstrating that it is entitled to judgment as a matter of law. Celotex, 477 U.S. at 323, 106 S.Ct. at 2252-53; Local 1545, 876 F.2d at 1292. Once this burden is met, the non-moving party must “go beyond the pleadings” and designate specific facts to support or defend each element of the cause of action, showing that there is a genuine issue for trial. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53; Local 1545, 876 F.2d at 1293. Neither party may rest on mere allegations or denials in the pleadings, Anderson, 477 U.S. at 248, 106 S.Ct. at 2510; Koclanakis v. Merrimack Mut. Fire Ins. Co., 899 F.2d 673, 675 (7th Cir.1990), or upon conclusory statements in affidavits, Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572 (7th Cir.1989); First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1011 (7th Cir.1985), and both parties must produce proper documentary evidence to support their contentions. Whetstine v. Gates Rubber Co., 895 F.2d 388, 392 (7th Cir.1990); Local 1545, 876 F.2d at 1293. In deciding a summary judgment motion, the Court must view the record in the light most favorable to the non-moving party, and all reasonable inferences shall be drawn in that party’s favor. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; Santiago, 894 F.2d at 221. A court need not draw every inference from the record, only reasonable inferences. Local 1545, 876 F.2d at 1292-93; Spring v. Sheboygan Area Sch. Dist., 865 F.2d 883, 886 (7th Cir.1989).
III. DISCUSSION
A. Parties’ Argvments-.
The defendants cite five (5) bases supporting either dismissal or summary judgment. They first claim that, under Rule 12(b)(1), this Court lacks subject matter jurisdiction because (1) no current federal statute waives sovereign immunity of the VA from suit in federal district court, (2) no current federal statute provides a remedy in federal district court for the plaintiffs Constitutional claim, (3) the plaintiffs claims are precluded under 38 U.S.C. § 511, (4) the plaintiff does not allege a procedural Constitutional violation, (5) the VA has complied with 38 U.S.C. § 1151, and (6) suit is barred by the Tucker Act, 28 U.S.C. § 1346(d). The defendants also claim that, because the plaintiff has offered no jurisdictional basis or statutory authority for his Constitutional claims, he has failed to state a claim upon which relief can be granted under Rule 12(b)(6). Thirdly, they argue that, because the plaintiffs VA claim remains suspended pending the appellate ruling in Gardner, he has failed to exhaust all available administrative remedies. The defendants further claim that the statutory authority granted to the United States Court of Veterans Appeals to review VA benefits decisions includes the review of purported Constitutional violations. Finally, the defendants assert that, absent Congressional authorization, the VA may not be sued eo nomine.
The plaintiffs somewhat cryptic response charges that the Washington D.C. Regional Office’s Rating Decision “is a written, signed and adjudicated confession, admitting [that] the above disabilities were the fault made by the [VA] on 4/10/75.” (Emphasis in original). He argues that other evidence, including the surgeon’s indication that his small hiatal hernia was a preexisting condition and post-surgery physician’s reports indicating proper functioning of both vocal cords, is outweighed by this “admission.” He also claims that the defendants misled the Court by inaccurately citing § 1151 in its brief in violation of his “guaranteed right” to Equal Protection under the Constitution. Finally, the plaintiff alleges that the defendants “willfully violated” 38 C.F.R. § 3.358(e)(3), and have wrongly held his current claim in abeyance pending appellate resolution of Gardner.
B. Legal Standard-.
Military veterans injured by treatment or vocational rehabilitation at VA hospitals may *1278 be eligible for disability benefits under 38 U.S.C. § 1151 (formerly § 351),[5] which provides, in relevant part, that:
“[w]here any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation ..., awarded under any of the laws administered by the Secretary [of Veterans Affairs] or as a result of having submitted to an examination under any such law, and not the result of such veteran’s own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death compensation under this chapter and dependency and indemnity compensation ... shall be awarded in the same manner as if such disability, aggravation, or death were service-connected.”
The Secretary, through regional VA offices, makes initial determinations as to the propriety and amount of such compensation. See 38 U.S.C. § 511 (formerly § 211(a)). The Board of Veterans Appeals (“BVA”), in turn, provides final administrative review of such decisions. 38 U.S.C. § 7104 (formerly § 4004).
The Veterans Judicial Review Act (“VJRA”), enacted on November 18,1988 with an effective date of September 1, 1989, provides a limited waiver of sovereign immunity for litigants seeking judicial review of BVA benefit decisions. See Pub.L. No. 100-687, 102 Stat. 4105 (1988).[6] The VJRA amended § 511 to read as follows:
“(a) The Secretary [of Veterans’ Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.
(b) The second sentence of subsection (a) does not apply to—
(1) matters subject to section 502 of this title;
(2) matters covered by sections 1975 and 1984 of this title;
(3) matters arising under chapter 37 of this title; and
(4) matters covered by chapter 72 of this title [38 U.S.C. 7251 et seq.J.
(Emphasis added). Chapter 72 of the VJRA, in turn, grants the United States Court of Veterans Appeals (“CVA”) “exclusive jurisdiction” to review decisions of the BVA. 38 U.S.C. § 7252.[7] In limited circumstances, *1279 decisions by the CVA may be further reviewed by the Court of Appeals for the Federal Circuit. 38 U.S.C. § 7292.[8]
C. ANALYSIS:
The defendants request dismissal of this case based on the Court’s lack of subject matter jurisdiction under Rule 12(b)(1) and the plaintiffs failure to state a claim upon which relief may be granted under Rule 12(b)(6). As previously indicated, only the latter acts as a dismissal on the merits, thereby entitling the movant to seek summary judgment motion under Rule 56. Win-slow, 815 F.2d at 1116. As a result, where the VA raises both defenses in a suit brought by a veteran to challenge disability benefits awarded under § 1151, the Seventh Circuit recognizes that:
“[t]he VA should [move] for dismissal for want of jurisdiction under 12(b)(1) and, in the alternative, for failure to state a claim under 12(b)(6). See Fed.R.Civ.P. 12(g) (consolidation of defenses in a motion). The district court would [ ] then consider[ ] whether it ha[s] jurisdiction. [If] the court [finds] that it ha[s] jurisdiction, it would [ ] then consider[ ] the VA’s motion asserting that the plaintiff ha[s] failed to state a claim. If the court [finds] that [the plaintiff] has not stated a claim, it could [] grant[ ] summary judgment.”
Id. In this case, then, we must first consider the defendants’ Rule 12(b)(1) motion; as previously indicated, the plaintiff maintains the burden of proving that jurisdiction exists, and the Court must look beyond the complaint and view all relevant evidence.
In ascertaining whether the Court has subject matter jurisdiction over the plaintiffs Constitutional claim, we must analyze the historical development of § 511 and its precursor, § 211(a). The Second Circuit traced the evolution of § 511 in Larrabee by Jones v. Derwinski 968 F.2d 1497 (2nd Cir. 1992).[9] In Larrabee, the sister/conservator of a physically disabled and legally incompetent Vietnam veteran sued the VA in the District of Connecticut, claiming that the VA failed to provide him with adequate care in violation of, inter alia, substantive and proce *1280 dural due process; the VA moved to dismiss the former claim under Rule 12(b)(6) and as barred by § 511, and moved for summary judgment on the latter claim. Id. at 1498-99. The district court judge granted both motions. Id.
After noting that the “fulcrum of the controversy” was § 511, and that “none of the exceptions in section 511(b) [gave] the district court jurisdiction,” the Second Circuit found that the district court lacked subject matter jurisdiction over either of the plaintiffs Constitutional claims. Id. at 1499. In reaching this conclusion, the Larrabee court outlined the “long and rich history” of § 511:
“Since Congress first legislated in the area of veterans’ benefits over fifty years ago, it has consistently precluded judicial review of veterans’ benefits determinations. Section 211(a) of the Veterans’ Benefits Act of 1957, Pub.L. No. 85-56, 71 Stat. 83, 92 (current version at 38 U.S.C.A. § 511(a) (1991)), which consolidated and simplified veterans’ benefits law, prohibited review of ‘any question of law or fact concerning a claim for benefits or payments.’
A procession of decisions by the D.C. Circuit, however, ‘significantly narrow[ed] the preclusion statute.’ In 1970, Congress responded to the D.C. Circuit’s ‘fairly tortured construction [of section 211],’ by amending the statute to overrule that court’s grudging interpretation of the preclusion provision. The 1970 version of section 211(a), which is substantially similar to current section 511(a), provided that ‘the decisions of the Administrator on any question of law or fact under any law administered by the Veterans’ Administration providing benefits for veterans and their dependents or survivors shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.’
In 1974, the Supreme Court had its first opportunity to review the 1970 amendments, and it held that section 211(a) insulated from judicial review decisions ‘made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts.’ Johnson v. Robison, 415 U.S. 361, 367, 94 S.Ct. 1160, 1166, 39 L.Ed.2d 389 (1974). It did not bar review of the very statute itself. Accordingly, under Johnson, facial challenges to the veterans’ benefits statutes could be brought in district court pursuant to its federal question jurisdiction, 28 U.S.C. § 1331.
Since Johnson, we have distinguished between attacks upon the statute as drafted and the statute as applied; and we have held that section 211(a) precludes judicial review of non-facial constitutional claims, adding ‘that one may not circumvent § 211(a) by seeking damages on a constitutional claim arising out of a denial of benefits.’ These cases clearly establish that section 211(a) precludes federal courts from hearing claims'—even if draped in constitutional terms—seeking a particular type or level of medical care.
This conclusion is buttressed by Congress’s response to the Supreme Court’s extension of Johnson in Traynor v. Turnage, 485 U.S. 535, 545, 108 S.Ct. 1372, 1380, 99 L.Ed.2d 618 (1988) (‘the question whether a [VA] regulation violates the Rehabilitation Act is not foreclosed from judicial review by § 211(a)’). Concerned that ‘the Court’s opinion in Traynor would inevitably lead to increased involvement of the judiciary in technical VA decision-making,’ Congress overhauled section 211 in the Veterans’ Judicial Review Act (“VJRA”), Pub.L. NO. 100-687, 102 Stat. 4105 (1988). The VJRA provides, for the first time, judicial review of veterans’ benefits determinations in the Federal Circuit; at the same time it broadens section till’s preclusion of judicial review by other courts.
By providing judicial review in the Federal Circuit, Congress intended to obviate the Supreme Court’s reluctance to construe the statute as barring judicial review of substantial statutory and constitutional claims, see Traynor, ⅛85 U.S. at 108 S.Ct. at 1878-79; Johnson, jl5 U.S. at 866-67, 9⅛ S.Ct. at 1165-66, while maintaining uniformity by establishing an exclusive mechanism for appellate review of decisions of the Secretary. Under the VJRA, after the Secretary makes a deei *1281 sion on the award of benefits, a veteran may appeal it to the Board of Veterans’ Appeals. The Board’s decision constitutes the Secretary’s final determination, which may then be appealed to the Court of Veterans Appeals, an Article I court established by the VJRA with ‘exclusive jurisdiction’ to review the decisions of the Board of Veterans’ Appeals. Decisions of the Court of Veterans Appeals may then be appealed, but only to the Federal Circuit ...

We agree (with the only other Circuit to consider this statutory scheme) that ‘[tjhese provisions amply evince Congress’s intent to include all issues, even constitutional ones, necessary to a decision which affects benefits in this exclusive appellate review scheme.’ Hicks v. Veterans Admin., 961 F.2d 1367, 1370 (8th Cir. 1992). Although district courts continue to have ‘jurisdiction to hear facial challenges of legislation affecting veterans’ benefits, ’ Disabled Am. Veterans v. United States Dep’t of Veterans Affairs, 962 F.2d 136, 140 (2d Cir.1992) (emphasis added), other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA The district court, therefore, lacked jurisdiction to entertain Larrabee’s claims that the defendants violated his due process rights in this case.”

(Citations omitted) (emphasis added). In Larrabee, then, the Second Circuit recognized that Congress, in passing the VJRA, granted the CVA and the Federal Circuit, and not the district courts, exclusive jurisdiction to review all constitutional claims involving disability benefits decisions by the VA except those challenging the facial validity of applicable statutes.[10] See also Hicks v. Veterans Admin., 961 F.2d 1367, 1369 (8th Cir. 1992) (finding that the VJRA scheme of review “does not exclude claims which are based upon the Constitution ... [and] includes all claims, whatever their bases, as long as the claim is ‘necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans’ ”).
As noted in Larrabee, passage of the VJRA significantly altered the jurisdictional landscape in federal court of non-facial constitutional challenges to the VA’s benefits decisions under § 1151, including that exercised by district courts within the Seventh Circuit. In July of 1988, nearly four months prior to the enactment of the VJRA and over one year prior to its effective date, the Seventh Circuit addressed the authority of district courts to hear such claims in Marozsan v. United States, 852 F.2d 1469 (7th Cir. 1988). In Marozsan, a Navy veteran who had been denied disability benefits several times “filed an action in federal court alleging, among other things, that the VA employed an arbitrary quota system in processing claims that denied him due process of law.” Id. at 1471. The district court entered summary judgment in favor of the VA, finding that § 211(a) (now § 511) “was an unequivocal bar to judicial review of Marozsan’s due process claims, and rejected on the merits his equal protection challenge to the statute itself.” Id.
In an en banc opinion, the Seventh Circuit affirmed summary judgment for the VA as to the merits of the plaintiff’s equal protection claim; however, it reversed the district court’s failure to address the merits of his due process claim. Id. After noting that the plaintiff challenged “the methods—not the decision—of the Administrator,” the Maroz-san court found that the district court’s interpretation of § 211(a) “would imply that Congress has chosen not to grant Marozsan a judicial remedy against VA procedures that violate the Constitution.” Id. at 1472. “As a result, the plaintiff “would have no judicial forum, and indeed—since the VA disclaims authority to consider constitutional claims— no forum at all in which to raise his due process claim.” Id. (footnotes omitted). To avoid “profound and long-debated questions about the power of Congress, consistent with Article III, to preclude all judicial review of executive agency action ... [and] to preserve [§ 211(a)’s] constitutionality,” the Seventh Circuit crafted into § 211(a) a requirement that veterans be allowed “substantial consti *1282 tutional challenges [in district court] to the veterans’ benefits statutes and regulations, as well as to the procedures established by the VA to administer them.” Id. See also Winslow, 815 F.2d at 1117 (finding that § 211(a) did not bar district court review of claims that the procedures of the VA violated the due process clause).
This Court reads Larrabee as a refinement, rather than abandonment, of the principles enunciated in Marozsan. As an initial matter, both cases recognize that, whether or not the validity of veterans’ benefits laws are challenged on their face, veterans raising constitutional objections to VA benefits decisions are entitled to judicial review. In addition,' the constitutional claim brought by the plaintiff in Marozsan, that an administrative procedure employed by the VA in applying § 211(a)- violated his due process rights, is a small step from a constitutional challenge of the facial validity of the statute itself, which Larrabee recognizes as the only post-VJRA circumstance in which a district court retains jurisdiction to review a VA benefits decision; both claims, in turn, are far removed from a challenge of a fact-specific benefits determination by the VA, recognized by both Larrabee and Marozsan as immune from federal judicial review. Larrabee, 968 F.2d at 1500-01; Marozsan, 852 F.2d at 1475, n. 13. Nevertheless, given the VJRA’s grant of “exclusive jurisdiction” to the Federal Circuit to “interpret constitutional and statutory provisions, to the extent presented and necessary to a decision,” 38 U.S.C. § 7292(c), (d); see Hicks, 961 F.2d at 1369 (finding that “[t]he statutory language in Chapter 72 of Title 38 reinforces the interpretation that constitutional claims are included within [VJRA] scheme of review ... and [ ] refutes [the plaintiffs] assertion that concurrent jurisdiction exists”), any attempt in Marozsan to grant district courts broad-based power to hear non-facial constitutional challenges to VA benefits decisions' appears outmoded. By channeling such claims to the CVA and the Federal Circuit, the VJRA continues to serve the two legislative purposes of § 211(a) recognized in Marozsan; (1) shielding the district courts from the burden of reviewing individual claims determinations, and (2) ensuring the expert and uniform adjudication of individual claims. Mar-ozsan, 852 F.2d at 1475. For these reasons, this Court finds that the Seventh Circuit ruling in Marozsan does not cloak district courts with subject matter jurisdiction regarding non-facial constitutional challenges to VA benefits decisions.
In the instant ease, it is clear that the plaintiff does not challenge the validity of § 1151 on its face; he simply claims that the VA denied him equal protection under the Fourteenth Amendment by failing to grant him relief thereunder and to properly apply 38 C.F.R. § 3.358(e)(3).[11] The former asks for a review of the VA’s application of § 1151 to his specific factual circumstance; judicial review is clearly precluded under both Lar-rabee and Marozsan. His latter claim, while arguably reviewable by this Court prior to enactment of the VJRA pursuant to Maroz-san, must, as indicated in Larrabee, now be brought before the CVA and Federal Circuit.[12] The plaintiff, then, fails to meet his burden of showing the presence of subject matter jurisdiction by competent proof. As a result, the Court must grant the defendants’ Motion to Dismiss pursuant to Rule 12(b)(1), and is precluded from addressing the merits of his case or entering summary judgment pursuant to Rule 56.
*1283 IY. SUMMARY
For the foregoing reasons, the Court hereby GRANTS the defendants’ Motion to Dismiss pursuant to Rule 12(b)(1), and ORDERS that the above-captioned matter be dismissed without prejudice.
SO ORDERED.

. His first such filing, in June of 1968, claimed service-connection for malaria, mumps, a back condition, and hypertension. (Maddox Aff. at ¶ 4, Ex. 1.) In December of 1968, the VA issued a Rating Decision establishing that the plaintiff had service-connected arterial hypertension evaluated as 10% disabling and service-connected atrophic left testes due to mumps with orchiditis evaluated as 0% disabling. (Id.) In April of 1969, the plaintiff reopened his claim, seeking an increased evaluation for his service-connected hypertension and adding a claim for a stomach condition. (Id.) In May of 1970, the VA issued a Rating Decision establishing that the plaintiff had a 20% disabling service-connected chronic lumbosacral strain, and failing to establish a service-connection for gastritis, functional bowel syndrome, headaches, chronic colds, and a bilateral eye condition. (Id.)
In April of 1971, the plaintiff reopened his claim for a third time, requesting an increased evaluation of his service-connected hypertension and adding claims for eye and stomach conditions. (Id.) In May of 1971, the VA denied such claims. In March of 1972, the plaintiff again reopened his claim for an increased evaluation of his service-connected hypertension and purported eye condition. (Id.) In May of 1972, the plaintiff’s service-connected arterial hypertension evaluation was increased from 10% disabling to 20% disabling; however, the VA failed to establish a service-connection for obesity. (Id.) In September of 1972, the plaintiff reopened his claim for a fifth time, requesting an increased evaluation of his service-connected hypertension. (Id.) In June of 1974, the VA increased its evaluation of his service-connected arterial hypertension from 20% disabling to 40% disabling; however, it failed to establish service-connections for a back condition, heart condition, eye condition, renal condition, gastritis, and a hiatal hernia. (Id.) In February of 1975, the Board of Veterans Appeals ("BVA") held that the plaintiff's hiatal hernia and psychophysiological gastrointestinal reaction were not service-connected, his visual defect and personality disorder were not compensable diseases, his cardiac enlargement and optic disease were not demonstrated, and an increased evaluation for his service-connected hypertension and chronic lumbosacral strain was not established. (Id.)
In March of 1975, the VA issued another Rating Decision denying the plaintiff's request for an increased evaluation for his back condition. (Id.) In June of 1975, the plaintiff requested a temporary 100% evaluation for lower back pain; the VA issued a Rating Decision granting a temporary 100% evaluation during his period of hospitalization. (Id.) In November of 1975, the plaintiff appeared before the VA Rating Board seeking another increased evaluation for his high blood pressure and back condition; in January of 1976, a Rating Decision was issued holding the evaluation for his service-connected back condition and reducing the evaluation for his hypertension from 40% disabling to 20% disabling. (Id.) In January of 1977, the BVA declined to increase the evaluation for the plaintiff's hypertension and chronic lumbosacral strain. (Id.)
In April of 1977, the plaintiff again reopened his claim of service-connection for a hiatus hernia, diverticulosis, gastroenteritis, and interverte-bral disc syndrome. (Id.) In May of 1977, the VA issued a Rating Decision holding that (1) the issue of service connection for a hiatus hernia was previously considered by the BVA in February of 1975 and the plaintiff had submitted no new material evidence, (2) diverticulitis was not shown during his period of active service, (3) gastroenteritis was an acute condition and therefore not a ratable disability, (4) an intervertebral disc syndrome had not been diagnosed on official examinations, and (5) the plaintiff's service-connected back symptoms were properly evaluated under the diagnosis of chronic lumbosacral strain. (Id.)

. See id.

. See infra note 11.

. On August 2, 1993, the plaintiff filed a document entitled “Reply Brief of Plaintiff in opposition to the reply Brief of Defendants in support of their motion to dismiss or for summary judgment.” However, because a non-moving party is not authorized to file a "reply to the movant's reply brief” under the Federal Rules of Civil Procedure or § 6.01 of the Local Rules for the Eastern District of Wisconsin, it has not been considered by the Court.

. Title 38 was renumbered pursuant to the Department of Veterans Affairs Codification Act, which became effective August 6, 1991. See Pub.L. No. 102-83, 105 Stat. 378 (1991); Larrabee by Jones v. Derwinski, 968 F.2d 1497, 1499 n. 1 (2nd Cir.1992).

. It is fundamental that, under the doctrine of sovereign immunity, the United States cannot be sued without its consent. United States v. Testan, 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); United States v. Sherwood, 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Consent must be expressed unequivocally, and is strictly construed. E.g., United States v. Mitchell, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351-52, 63 L.Ed.2d 607 (1980); United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502-03, 23 L.Ed.2d 52 (1969). Waiver of sovereign immunity must be given for a plaintiff to seek monetary damages for alleged Constitutional violations. Testan, 424 U.S. at 400-01, 96 S.Ct. at 954-55; Radin v. United States, 699 F.2d 681, 685 (4th Cir.1983).

. 38 U.S.C. § 7252 states that:
"(a) The Court of Veterans Appeals shall have exclusive jurisdiction to review decisions of the Board of Veterans' Appeals. The Secretary may not seek review of any such decision. The Court shall have power to affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate.”
(b) Review in the Court shall be on the record of proceedings before the Secretary and the Board. The extent of the review shall be limited to the scope provided in section 7261 of this title. The Court may not review the schedule of ratings for disabilities adopted under section 1155 of this title or any action of the Secretary in adopting or revising that schedule.
(c) Decisions by the Court are subject to review as provided in section 7292 of this title.
(Emphasis added). 38 U.S.C. § 7261(a), in turn, provides that:
"In any action brought under this chapter, the Court of Veterans Appeals, to the extent necessary to its decision and when presented, shall—
(1) decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary;
*1279 (2) compel action of the Secretary unlawfully withheld or unreasonably delayed;
(3) hold unlawful and set aside decisions, findings (other than those described in clause
(4)of this subsection), conclusions, rules, and regulations issued or adopted by the Secretary, the Board of Veterans' Appeals, or the Chairman of the Board found to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
(D) without observance of procedure required by law; and
(4) in the case of a finding of material fact made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside such finding if the finding is clearly erroneous.”
(Emphasis added).

. 38 U.S.C. § 7292(c) and (d)(1) state that:
"(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision. The judgment of such court shall be final subject to review by the Supreme Court upon certiorari, in the manner provided in section 1254 of title 28.
(d)(1) The Court of Appeals for the Federal Circuit shall decide all relevant questions of law, including interpreting constitutional and statutory provisions. The court shall hold unlawful and set aside any regulation or any interpretation thereof (other than a determination as to a factual matter) that was relied upon in the decision of the Court of Veterans Appeals that the Court of Appeals for the Federal Circuit finds to be—
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or in violation of a statutory right; or
(D) without observance of procedure required by law.
(2) Except to the extent that an appeal under this chapter presents a constitutional issue, the Court of Appeals may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case.”
(Emphasis added).

. See also Marozsan v. United States, 852 F.2d 1469, 1486-87 (7th Cir. 1988) (Easterbrook, J., dissenting).

. For the VJRA to apply to such claims, the veteran must have filed a notice of disagreement as to the VA's benefits decision on or after November 18, 1988. Hicks v. Veterans Admin., 961 F.2d 1367, 1369 (8th Cir.1992).

. As previously indicated, the VA suspended the plaintiff’s claim for disability benefits stemming from his esophageal surgery pending appellate review of Gardner v. Derwinski, 1 Vet.App. 584 (1992), which invalidated the VA’s use of § 3.358(c)(3) in granting disability benefits pursuant to § 1151. On September 13, 1993, the Federal Circuit issued its opinion, affirming the invalidation of 38 C.F.R. § 3.358. Gardner v. Brown, 5 F.3d 1456, 1459 (Fed.Cir.1993) (finding, inter alia, that "38 U.S.C. § 1151 unambiguously does not require the veteran to prove that the VA treatment was faulty or that an accident occurred during the treatment”), cert. granted-U.S.-, 114 S.Ct 1396, 128 L.Ed.2d 69 (1994) (No. 93-1128). While not relevant to our decision in this matter, the Federal Circuit's opinion in Gardner may once again have triggered administrative review of the plaintiff's claims.

. Id. Pursuant to Gardner, the VA is required to review the plaintiff’s eligibility for disability benefits under § 1151 without applying 38 U.S.C. § 3.358(c)(3); thus, subject to Supreme Court review of Gardner, this claim may be mooted for purposes of appeal to the CVA and Federal Circuit.